BAKER v BAKER

Docket No. 253718. Submitted September 13, 2005, at Detroit. Decided November 3, 2005, at 9:05 a.m. Leave to appeal sought.

Ronald C. Baker, who had obtained a divorce from Suzanne M. Baker in the Monroe Circuit Court pursuant to a judgment that awarded each party half the other party's pension benefits accrued during the marriage and who had purchased 2.2 years of service credit to retire 2.2 years earlier than anticipated, sought an order requiring the defendant either to return what she received or to pay approximately half of the cost of purchasing the service credits. The court, William F. LaVoy, denied the plaintiff's motion and granted the defendant's motion for summary disposition, ruling that the judgment of divorce and the corresponding eligible domestic relations order (EDRO) must be enforced as written. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

Because the terms of the judgment of divorce and the EDRO are clear and because there is no appropriate reason for modifying them, the trial court did not err by enforcing them as written.

1. MCL 552.18(2) allows a trial court to include retirement benefits in the marital estate where just and equitable. Early retirement incentive payments received before becoming eligible to receive pension benefits are not regular pension benefits. In this case, the early payments are not early retirement incentive payments; they are regular pension benefits. Because of the plaintiff's agreement with and payment to his employer, the regular pension benefits began to be paid 2.2 years before the plaintiff had worked the required 30 years to qualify for a pension from his employer. Under the judgment of divorce, the defendant was entitled to half of the regular pension benefits accrued during the marriage. That the plaintiff artificially created a situation in which he met the retirement requirements of the plan and retired 2.2 years earlier than his expected retirement date does not render the regular pension payments to the defendant outside the scope of the judgment of divorce and the EDRO.

2. Property settlement provisions in a divorce judgment typically are final and cannot be modified by the court. Absent fraud,

duress, or mutual mistake, courts must uphold divorce property settlements reached through negotiation and agreement of the parties. The trial court in this case did not err by enforcing the divorce judgment and the EDRO because they were clear and there was no apparent reason to modify them.

3. The plaintiff's purchase of his final 2.2 years of service credits does not impose any burden on the defendant to pay a portion of the buyout cost. The plaintiff paid $23,011 in exchange for not having to work the final 2.2 years. To make the defendant share the buyout cost would be tantamount to requiring the defendant to work half of the 2.2 years for the plaintiff.

DIVORCE — PROPERTY SETTLEMENTS — PENSIONS — POSTJUDGMENT SERVICE CREDIT PURCHASES.

Following a divorce in which a party was awarded a share of the other party's pension benefits accrued during the marriage, the purchase by the latter of service credits to allow that party to meet the service requirements for a regular retirement and to retire entitles the former to his or her share of the resulting pension payments with no obligation to pay the proportionate cost of purchasing the service credits.

*Law Offices of Larry A. Smith* (by *Larry A. Smith*) for the plaintiff.

*McCormick & Davies* (by *E. J. McCormick, Jr.*) for the defendant.

Before: FITZGERALD, P.J., and COOPER and KELLY, JJ.

PER CURIAM. In a motion filed with the trial court, plaintiff sought to compel defendant to return a portion of the pension benefits she received pursuant to the eligible domestic relations order[1] (EDRO) entered in the parties' prior divorce action. In the alternative, plaintiff sought a court order requiring defendant to pay plaintiff approximately half his cost of purchasing 2.2 years of service pursuant to a "Service Credit Purchase

[1] Used pursuant to the Eligible Domestic Relations Order Act, MCL 38.1701 *et seq.*, for participants of public employee retirement systems.

Agreement" plaintiff entered into with his employer. Defendant moved for summary disposition of plaintiff's motion. After a hearing, the trial court concluded that the judgment of divorce and corresponding EDRO must be enforced as written and granted defendant's motion. Plaintiff appeals by leave granted. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The parties were divorced in July of 2000, after a 25-year marriage that produced three children who are now adults. During the marriage, plaintiff was employed as a teacher and had a pension through the state of Michigan. Defendant was employed at MASCO Corporation, through which she also had a pension. Following extensive negotiations, the parties entered into a settlement agreement that was reduced to judgment. The judgment of divorce awarded each party a 50-percent interest in the other's pension benefits accrued during the marriage. The trial court also entered an EDRO covering plaintiff's pension. Plaintiff's pension plan offered full retirement benefits after 30 years of service, commonly referred to as a "30 and out" plan. At the time of the judgment, plaintiff's projected earliest retirement date was in January of 2006. However, in 1998, plaintiff's employer had instituted a program that permitted qualifying employees to enter into a "Service Credit Purchase Agreement" allowing them to purchase service credits and receive full pension benefits.

After the parties' divorce judgment was entered, plaintiff decided to enter into a "Service Credit Purchase Agreement" with his employer. At that time, plaintiff had not yet worked the full 30 years. Thus, to receive full pension benefits, the agreement required him to purchase his remaining 2.2 years of service

credit at a cost of $23,011. Plaintiff notified defendant of his intent to enter into this agreement and requested that defendant pay approximately half of the cost. Defendant declined to do so.

Despite defendant's refusal to contribute to the buy-out cost, plaintiff entered into the "Service Credit Purchase Agreement" with his employer in 2002. By the terms of the agreement, plaintiff purchased his remaining 2.2 years of service for $23,011, thus qualifying him under the "30 and out" provision of the plan. As a result of this agreement, plaintiff met the requirements for retirement and began receiving his full pension benefits. Also as a result of this agreement, and pursuant to the parties' divorce judgment and EDRO, defendant began receiving her portion of plaintiff's pension benefits.

Plaintiff filed a motion in the trial court seeking an order requiring that defendant either return the benefits she had already received as a result of the "Service Credit Purchase Agreement" or pay a portion of his buyout cost. Defendant filed a motion for summary disposition, which the trial court granted stating:

> What the Court finds is as follows: Is that there was an agreement, that agreement's set forth in the divorce and that agreement is to be enforced. If the parties want to do something else, that isn't any problem if they agree to it. If former husband says [,] ["L]ook, I want to retire early, this is to your benefit, why don't we agree on who's going to pay how much["] and the two of you agree, that would be just fine. But I believe we cannot, in the face of the divorce, force that on—on a party.
>
> . . . [A]gain, parties might want to agree on something. Probably would make sense because there's an advantage to Ms. Baker, but what I'm finding is, the terms of the divorce are what must be enforced. If you want to talk about it, I think that is an excellent idea.

The trial court further ordered that defendant could submit a bill of costs and attorney fees for consideration.

## II. STANDARD OF REVIEW

"We review a trial court's dispositional ruling to determine if it was fair and equitable in light of the facts presented." *Quade v Quade,* 238 Mich App 222, 224; 604 NW2d 778 (1999). "The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Id.*

## III. ANALYSIS

The issue on appeal concerns the nature of the pension benefits that have been disbursed to defendant as a result of plaintiff's "Service Credit Purchase Agreement" with his employer. Relying on *Quade,* plaintiff argues that the pension benefits disbursed as a result of this agreement are early retirement benefits to which defendant is not entitled. We disagree. Plaintiff misconstrues the nature of the pension benefits at issue.

Pursuant to MCL 552.18(1), a trial court must include vested retirement benefits in the marital estate, making them subject to division. Even if retirement benefits are not vested, MCL 552.18(2) permits the trial court to include them in the marital estate where just and equitable. In *Perry v Perry,* 133 Mich App 453, 457-458; 350 NW2d 275 (1984), this Court noted that a retirement "plan is said to have vested when the employee's right to pension funds becomes irrevocable and will survive voluntary termination of employment. It is said to have matured when the employee acquires an unconditional right to immediate payment, whether

or not that right is exercised." In contrast, unvested interests are subject to contingencies such as unilateral termination by an employer or a prerequisite period of future employment. *Bolt v Bolt,* 113 Mich App 298, 302; 317 NW2d 601 (1982).

In *Jurva v Attorney General,* 419 Mich 209, 220; 351 NW2d 813 (1984), our Supreme Court, in addressing whether the Rochester school board had authority to provide early retirement incentive payments, clearly outlined the difference between early retirement payments and regular pension benefits. In so doing, the Court stated, "There is no requirement that a 'retiring' school teacher be immediately eligible to collect pension benefits. Rather, a teacher can leave employment and collect the early retirement incentive payments before becoming eligible to receive pension benefits." *Id.* at 222. Further, the Court stated, "early retirement incentives are not benefits tied to time in service, but rather are compensation for a tenured teacher's waiver of the contractual right to continued employment. The dollar amount of the benefit is measured not by the number of years served (as it would be for purposes of calculating a pension), but rather by the number of years of relinquished employment." *Id.* at 224.

In this case, plaintiff did not receive early retirement supplements that are distinguishable from his pension benefits. Rather, he received his regular pension benefits in which he was already vested at the time of divorce, only he began receiving these benefits, pursuant to the "Service Credit Agreement," 2.2 years earlier than his expected retirement date. The question posed is whether defendant should receive a portion of these benefits pursuant to the judgment of divorce and the EDRO.

The judgment of divorce provides that defendant "shall be awarded a fifty (50) percent interest in the marital share of [plaintiff's] pension plan . . . ." The EDRO provides that the Plan will pay defendant, "the Alternate Payee,[2] according to the following terms and conditions." It further provides, in relevant part:

> (a) It is the parties' intention, and the Order of this Court, that the Alternate Payee receive a monthly benefit from the Plan of fifty percent (50%) of the Participant's retirement allowance, including a prorata [sic] share of any guaranteed automatic annual benefit increases (such as 3% annual increases under the Member Investment Plan), which has accrued as of June 17, 1999, which percentage takes into consideration the years of service, if any, that were accrued prior to the date of marriage.

> (b) *The benefits payable to the Alternate Payee will otherwise commence when the Participant begins to receive benefits under the Plan* and shall be payable in the form of the Plan's Option 3 50% Joint Survivor Allowance as provided in Paragraph 5(e) below, unless the Alternate Payee elects to receive her benefit in a form which provides an annuity based on her life, either commencing when the Participant begins to receive benefits under the Plan or commencing early pursuant to Paragraph 5(c).

> (c) *The Alternate Payee shall have the right to elect to receive benefit payments under the Plan at any time beginning when the Participant reaches the earliest retirement date* as defined in Section 2(d) of the Eligible Domestic Relations Order Act (Public Act 45 of 1991). If the Participant elects to receive a reduced early retirement benefit, the Alternate Payee's benefit shall be reduced by the same early retirement factor. [Emphasis added.]

---

[2] The "Alternate Payee" is "a spouse of a participant under a judgment of separate maintenance, or a former spouse, child or dependent of a participant, who is named in an eligible domestic relations order." MCL 38.1702(a).

MCL 38.1704 of the EDRO act, MCL 38.1701 *et seq.*, provides:

> Except as otherwise provided in this act, the payment of a benefit to an alternate payee under an EDRO and this act shall begin on the retirement allowance effective date of the participant. . . .

MCL 38.1702 provides, "(d) 'Earliest retirement date' means the earliest date on which a participant meets all of the requirements for retirement under a retirement system except for termination of employment."

Here, plaintiff artificially created a situation in which he met the retirement requirements of the plan, actually retired, and began receiving pension benefits earlier than his expected retirement date. Pursuant to the terms of the divorce judgment, the EDRO quoted above, and the EDRO act, when plaintiff met the requirements of retirement and, at the same time, began to receive pension benefits, defendant was entitled to 50 percent of those benefits. The fact that plaintiff contracted to receive these pension benefits 2.2 years earlier than his expected retirement date does not render the payments to defendant outside the scope of the judgment of divorce and the EDRO.

Plaintiff also contends that defendant is not entitled to the pension benefits she received as a result of the "Service Credit Purchase Agreement" because the parties clearly intended that defendant would not receive such benefits until 2006. We disagree. The EDRO clearly specifies that the benefits payable to defendant will commence when plaintiff begins to receive his benefits. In essence, plaintiff seeks to modify the judgment and the EDRO to insert language precluding defendant from receiving her portion of plaintiff's pension benefits before 2006, even though plaintiff began receiving his portion before that time. Property settle-

ment provisions in a divorce judgment typically are final and cannot be modified by the court. *Quade, supra* at 226. Absent fraud, duress, or mutual mistake, courts must uphold divorce property settlements reached through negotiation and agreement of the parties. *Id.* Modifications of property settlements in divorce judgments are disfavored. *Norman v Norman*, 201 Mich App 182, 189; 506 NW2d 254 (1993). Here, because the terms of the judgment of divorce and the EDRO are clear and because there is no appropriate reason for modifying them, the trial court did not err by enforcing them as written.

Furthermore, plaintiff's reliance on *Quade* is misplaced. At issue in *Quade,* were unvested early retirement *supplements* that were distinguishable from the defendant's pension benefits. In *Quade,* the plaintiff contended that, because the judgment of divorce awarded her "fifty percent of defendant's entire retirement package, and because early retirement benefits are part of the pension package," the trial court should have entered a Qualified Domestic Relations Order (QDRO) including language granting plaintiff a share of defendant's early retirement supplemental payments. *Id.* at 224. This Court disagreed and held that the early retirement supplemental payments at issue were "a separate and distinct component of defendant's pension plan that were not specifically included in plaintiff's property settlement in the judgment of divorce." *Id.* at 225. This case is distinguishable from *Quade* in that plaintiff did not receive supplemental benefits; rather, he received his full pension benefits under his plan's "30 and out" provision. Moreover, defendant's portion of these pension benefits was the same amount she would have received had she received them in January 2006, when plaintiff was originally projected to retire.

We also disagree that plaintiff's purchase of 2.2 years of service credits imposes any burden on defendant to pay a portion of the buyout cost. The $23,011 that plaintiff paid was in exchange for his not having to work the final 2.2 years in his "30 and out" plan. Requiring defendant to pay for half of plaintiff's buyout costs would be tantamount to requiring defendant to work half of the 2.2 years for plaintiff. Plaintiff's purchase of the final 2.2 years of his "30 and out" plan did not result in defendant receiving any pension benefits other than those to which she was entitled under the judgment of divorce and the EDRO. It merely resulted in her receiving those pension benefits 2.2 years earlier than expected.

For these reasons, we conclude that the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.