LEONARD L. WEBSTER, APPELLANT, V.
SUSAN K. WEBSTER, APPELLEE.

716 N.W.2d 47

Filed June 16, 2006.   No. S-05-372.

John A. Kinney, of Govier, Milone & Kinney, L.L.P., for appellant.

Karen A. Bates-Crouch, and, on brief, Kimberly A. Booth, of Bates-Crouch Law Office, P.C., L.L.O., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This case presents an appeal from the decree of dissolution dividing the parties' marital property, including pension and retirement benefits. The issues presented are (1) whether the disparate timing of the parties' retirement must be considered in the

distribution and (2) whether a party who participated in a public employee retirement fund "in lieu of" Social Security participation is entitled to an offset or other compensation for a spouse's Social Security benefits.

## BACKGROUND

Leonard L. Webster and Susan K. Webster were married on July 30, 1983. On September 25, 2003, Leonard petitioned for dissolution. The marriage was dissolved by a decree filed March 14, 2005. The trial court did not award alimony and set forth an equal distribution of marital assets. With regard to pension and retirement plans, the court awarded 50 percent of the marital portion of Susan's employee retirement trust fund to Leonard, pursuant to a qualified domestic relations order, to be entered at a date separate from the decree and incorporated at that time. It similarly awarded 50 percent of the marital portion of Leonard's employee retirement plan to Susan, pursuant to a qualified domestic relations order, to be entered at a date separate from the decree and incorporated at that time. The court set forth that the parties had "stipulate[d]" that the " 'marital portion' " of each pension should be determined using a coverture fraction, and each party should be entitled to 50 percent of the other parties' pension benefit, multiplied by a fraction, the numerator of which was the number of months of marital service (employment/service during the marriage) and the denominator of which was the total months of service/employment.

Leonard had begun working for the Omaha Public Power District (OPPD) on November 10, 1969. He worked there until his voluntary retirement on April 1, 2004, at the age of 54, which was during the pendency of the dissolution proceedings. There is no evidence that Leonard retired because of any disability or hindrance to his ability to work. The evidence presented at trial showed that Leonard received a monthly pension distribution of $3,728.75 before taxes.

Leonard testified that he did not contribute to Social Security during his employment with OPPD. No evidence was presented as to the amount of Social Security payments to which Leonard personally would have been entitled had he been entitled to receive Social Security. Susan was still working, and there was no evidence attempting to calculate either her expected Social

Security benefit or Leonard's spousal share of such benefit under the Social Security Act.

Susan began working for the Douglas County treasurer on February 9, 1981, where she remains employed, with no current plans to retire. She regularly contributed to Social Security, but evidence was not presented as to the future value of any Social Security benefits to which she might be entitled. The Douglas County employee retirement summary entered into evidence, calculated when Susan was 48, sets forth as follows:

> If you resign now your monthly benefit at age 65 will be ... $1,055.99
>
> Retire at age [55] with no reduction in benefits ... $1,272.21
>
> If you retire at age 62 your monthly benefit would be ... $1,618.14
>
> If you retire at age 65 your monthly benefit would be ... $1,618.14.

Susan was born on July 10, 1955, and was therefore 49 years old at the time of the dissolution decree.

Leonard filed suggestions with the court, in which he proposed the following as to the division of pension benefits:

> [Leonard's] pension is in "pay status". His gross income from the pension is $3,728.75. According [to Susan's] calculation, she should be awarded $1,121.24 per month from [Leonard's] pension award. The problem with [Susan's] suggestion is twofold:
>
> First, [Leonard] is entitled to one-half of [Susan's] pension, as admitted by [Susan] in her Suggestions to the Court. However, she has no intention to retire. While she is getting $1,121.24 from [Leonard's] pension, he will be getting no payment from her pension. According to documents obtained from Douglas County, if [Susan] retired now she would have a monthly benefit of $1,055.00 and [Leonard] would be entitled to one-half of that ($527). The difference between the two amounts is $594. [Leonard] suggests that he pay to [Susan] the sum of $750.00 per month to ... for ten (10) years to equalize their income and the pensions. This amount is higher than the $569 because alimony would be taxable to [Susan]. Under this scenario, [both of them] would both keep their own pensions. The

alternative to this would be [to] have [Susan] refund to [Leonard] each month the sum of $527, until such time as she retired and [Leonard] began to draw his portion of her pension. This would not have to be in the form of alimony, and could be termed an equalization payment.

Leonard also suggested that because he did not contribute to Social Security during his employment and would have insufficient time to do so with any future employer, the court should "allow [him] the opportunity to offset some of the inequity in social security benefits against his payment of pension benefits to [Susan]." Leonard explained:

This would be done only when [Susan] begins to receive social security benefits, and the order should state that [Leonard's] social security benefits should be deducted from [Susan's] social security benefit when both begin to collect it, and then offset the remainder, subject to the formula established in the case of *Marx v. Marx*, [265 N.J. Super. 418,] 627 A.2d 691 ([] 1993).

Susan's suggestions to the court, in contrast, proposed that each party should be awarded 50 percent of the marital portions of the other's retirement plans. Susan explained that the marital portion of Leonard's plan would be 60.14 percent, calculated by dividing the 249 months of marriage during service by the 414 months of total service. Fifty percent of 60.14 would be 30.07 percent. Thus, Susan calculated that she should be awarded 30.07 percent of Leonard's $3,728.75 monthly distribution, which would be $1,121.24 per month for the remainder of her lifetime. At the hearing, Susan explained that she was opposed to Leonard's suggested distribution of the pension benefits, because she believed that it resulted in an unfair distribution of the assets and would cause her to incur an additional tax liability if the court were to adopt Leonard's suggested distribution in the form of alimony. Susan testified that she was not seeking any alimony.

## ASSIGNMENTS OF ERROR

Leonard assigns that the trial court erred in (1) equally dividing the marital portions of the parties' respective pension plans without considering the fact that Leonard was older and was retired and that his pension was in "pay status"; (2) failing to consider, when dividing the pensions of the parties, the fact that

Susan was working at the time of trial and testified that she had no present intention to retire; and (3) failing to consider the fact that Leonard did not contribute to Social Security during his employment with OPPD and that Susan will receive a disproportionate share of his pension benefits unless a Social Security offset is ordered.

## STANDARD OF REVIEW

■ The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001).

## ANALYSIS

### PENSION "PAY STATUS"

We first address Leonard's assertion, embodied in his first two assignments of error, that the trial court erred in failing to adjust the property division for the fact that Leonard's pension plan is already in "pay status," while Susan does not plan to retire for several more years. Essentially, based on the assumption that both parties will live to their actuarial life expectancy and that Susan will not in fact retire until several years into the future, it is Leonard's assumption that Susan will receive many more years of her percentage share of his retirement benefit than he will of hers. Therefore, Leonard concludes that his share of the marital portion of the pension is inequitably low compared to Susan's and that the trial court should have made an adjustment to correct such inequity. Leonard explains:

> With respect to the parties' pensions, at the time of trial, [Leonard] was receiving a gross monthly pension payment of $3,728.75. After taxes, he received the sum of $3,010.81. According to documents obtained from Douglas County, if [Susan] retired on December 31, 2003, she would have a monthly benefit of $1,055.99 from her pension, payable at age 65. [Leonard] used this very conservative number in calculating the difference between the amounts that [Leonard] and [Susan] would receive each month if they were both retired. [Susan] acknowledged that if she waited until age 65 to retire, she would receive over $130,000 from [Leonard's] pension before [Leonard] received any

funds from the Douglas County pension as an alternate payee. The trial court's decision would have the following effect on income: [Susan's] $2,735.74 per month in salary combined with the $1,121.24 she would receive from [Leonard's] pension would give her a gross monthly income of $3,856.98. In contrast, [Leonard's] gross monthly income would be reduced to $2,607.51.

Brief for appellant at 6-7.

Leonard relies on *Dutchin v. Dutchin*, 273 Wis. 2d 495, 681 N.W.2d 295 (Wis. App. 2004), for his argument that the dissolution court abused its discretion in failing to embark upon his proposed income discrepancy analysis quoted above. In *Dutchin*, the appellate court concluded that it would not find an abuse of discretion in the trial court's decision to treat the husband's pension as income and enter a maintenance order for the wife until she reached retirement age. The evidence showed that the husband, although age 60, was unable to work due to physical and mental disability. The trial court had determined that if it were to treat the husband's pension as an asset and divide it equally, the wife would have a higher monthly income than the husband, which would result in a maintenance award being paid to him, resulting in a circular and complicated flow of money. See, also, *In re Marriage of Crosby*, 699 N.W.2d 255 (Iowa 2005) (upholding reduction by court of appeals in wife's share of husband's retirement benefits where husband suffered residual effects from stroke and was contemplating early retirement and had no Social Security, while 38-year-old wife continued to work and accrue both retirement and Social Security); *In re Marriage of Wilson*, 449 N.W.2d 890 (Iowa App. 1989) (refusing to find abuse of discretion in trial court's ruling that husband, who was going to take early retirement, would not be required to divide any of his pension and Social Security benefits with wife until wife actually retired).

In contrast, where the husband apparently suffered no physical or mental disability, but simply elected to retire earlier than anticipated, the court in *Baker v. Baker*, 268 Mich. App. 578, 710 N.W.2d 555 (2005), held that early retirement did not affect his unretired former wife's right to begin receiving her share of his pension benefits upon his receipt thereof. Accordingly, the court

affirmed summary judgment against the husband in his action to recoup payments made to the wife through the automatic effectuation of the divorce judgment and eligible domestic relations order. The court explained that the pension benefits in issue were regular pension benefits, a portion of which was marital property. The husband simply elected to receive those benefits earlier than his expected retirement date. Such election in no way rendered the early retirement payments outside the scope of the marital division of the judgment of divorce and the eligible domestic relations order, and the wife properly received her coverture share of the payments. See, also, *In re Marriage of Ramsey*, 339 Ill. App. 3d 752, 792 N.E.2d 337, 275 Ill. Dec. 106 (2003); *In re Marriage of Ably v. Ably*, 155 Wis. 2d 286, 455 N.W.2d 632 (Wis. App. 1990).

That portion of a pension which is earned during the marriage is part of the marital estate. See, Neb. Rev. Stat. § 42-366(8) (Reissue 2004); *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). In dissolution proceedings, the trial court has broad discretion in valuing and dividing pension rights between the parties. *Sonntag v. Sonntag*, 219 Neb. 583, 365 N.W.2d 411 (1985); *Rockwood v. Rockwood*, 219 Neb. 21, 360 N.W.2d 497 (1985). In *Polly v. Polly*, 1 Neb. App. 121, 487 N.W.2d 558 (1992), the Nebraska Court of Appeals explained that the most widely accepted method of valuing and dividing a pension plan upon a dissolution is to determine a fixed percentage of the future benefits to be paid to the spouse if and when they are payable to the owner of the plan. (Citing *Bloomer v. Bloomer*, 84 Wis. 2d 124, 267 N.W.2d 235 (1978).) See, also, *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981); *Paulone v. Paulone*, 437 Pa. Super. 130, 649 A.2d 691 (1994). This is described as the "coverture fraction" and was the method utilized by the dissolution court in this case. See, e.g., *Menake v. Menake*, 348 N.J. Super. 442, 792 A.2d 448 (2002).

While pension benefits actually received can be considered when determining alimony, see, e.g., *Carruth v. Carruth*, 212 Neb. 124, 321 N.W.2d 912 (1982), and *McBride v. McBride*, 211 Neb. 459, 319 N.W.2d 72 (1982), we are somewhat perplexed by Leonard's income analysis of the respective pension benefits when neither party ultimately requested an alimony award in this

case. As stated in part in Neb. Rev. Stat. § 42-365 (Reissue 2004), "While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately."

▪ With property division, the purpose is "to distribute the marital assets equitably between the parties." § 42-365. No matter which party has the larger pension, courts have determined that the value of that pension which was acquired during the marriage should be divided relatively equally. Both parties contributed to the earning of the pensions by their participation in the marriage and expected to be mutually protected by the pension benefits. See *Menake v. Menake, supra.* By this standard, it would be incongruous to reduce one party's equitable share in the other's pension simply because one has elected to retire early, while the other continues to work.

This is especially true because by electing to continue working, the working spouse generally increases the overall benefit in which his or her former spouse is to share. This is the case because generally speaking, the longer the employed party remains employed after the divorce, the more the retirement payments increase. See *Stouffer v. Stouffer*, 10 Haw. App. 267, 867 P.2d 226 (1994). As the court in *Holland v. Holland*, 403 Pa. Super. 116, 588 A.2d 58 (1991), explained, to compensate for the postponement of the working spouse's benefit, the spouse is permitted to enjoy increases in value occasioned by continued employment of the worker. Here, the Douglas County employee retirement summary confirms that the longer Susan waits to retire, the larger her retirement benefit will be.

The case law relied on by Leonard for his proposition that an adjustment should be made for the disparity in the expected years of payout of the parties' respective pension benefits generally deals with the unique circumstance of the "pay status" party's having been forced into early retirement because of a disability. In those cases, courts have crafted an approach to the equitable division of the property to accommodate this circumstance. As *Baker v. Baker*, 268 Mich. App. 578, 710 N.W.2d 555 (2005), illustrates, however, the fact that one party simply elects to enter into pay status early, without any compelling reason to do so, does not mandate that early retirement be considered in

the equitable division of those benefits. See, also, *Ward v. Ward*, 502 So. 2d 477 (Fla. App. 1987) (although "forced" retirement may establish changed circumstances permitting a modification, "voluntary" retirement will not), *disapproved on other grounds, Pimm v. Pimm*, 601 So. 2d 534 (Fla. 1992). Here, Leonard offered no evidence that he was unable to work or was otherwise forced to retire early. In fact, Leonard could presumably find other employment while at the same time drawing his early retirement benefit, thereby significantly altering the income analysis upon which Leonard wishes this court to rely. We conclude the trial court did not abuse its discretion by not adjusting for Leonard's pension pay.

## SOCIAL SECURITY

We next address Leonard's argument that the trial court abused its discretion in failing to account for the fact that Susan will receive significantly greater Social Security benefits than he will. Under 42 U.S.C. § 407(a) (2000), the transfer or assignment of Social Security benefits is forbidden and, in general, protects these benefits from "execution, levy, attachment, garnishment, or other legal process." The U.S. Supreme Court in *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 417, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), described § 407(a) as "impos[ing] a broad bar against the use of any legal process to reach all social security benefits." Congress has carved out an exception to allow the collection of past-due child support or alimony, but at the same time, it specifically excluded from that exception payment obligations arising from a community property settlement, equitable distribution of property, or other division of property between spouses or former spouses. See 42 U.S.C. § 659(a) and (i)(3)(B)(ii) (2000).

■ Courts generally agree that § 407(a) preempts state law that would authorize distribution of Social Security benefits, and that Social Security benefits themselves are not subject to direct division in a dissolution proceeding. Indeed, Leonard appears to concede that a direct allocation of Susan's Social Security benefits as a marital asset would be contrary to the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution. His argument is that the trial court erred in failing to order an "offset" of Susan's marital share of Leonard's

pension by an amount reflecting the marital share of the difference between Leonard's spousal share of Susan's Social Security and Susan's share of her Social Security benefit. Leonard claims that this form of indirect allocation is permissible. The issue of whether state courts may adjust for the parties' disproportionate Social Security benefits when dividing marital property in a dissolution decree is one of first impression for this court.

The U.S. Supreme Court has not specifically addressed whether a state court can indirectly offset or otherwise consider the parties' respective Social Security benefits in dividing marital property in a dissolution proceeding. However, several state courts look to the Court's decision in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), as instructing them that Social Security is not subject to an indirect adjustment through offset. See, *In re Marriage of James*, 950 P.2d 624 (Colo. App. 1997); *Johnson v. Johnson*, 726 So. 2d 393 (Fla. App. 1999); *In re Marriage of Crook*, 211 Ill. 2d 437, 813 N.E.2d 198, 286 Ill. Dec. 141 (2004); *In re Marriage of Boyer*, 538 N.W.2d 293 (Iowa 1995); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *Reymann v. Reymann*, 919 S.W.2d 615 (Tenn. App. 1995); *Marriage of Zahm*, 138 Wash. 2d 213, 978 P.2d 498 (1999); *Berthiaume v. Berthiaume*, No. C5-90-2392, 1991 WL 90839 (Minn. App. June 4, 1991). But see, *Kelly v. Kelly*, 198 Ariz. 307, 9 P.3d 1046 (2000); *Panetta v. Panetta*, 370 N.J. Super. 486, 851 A.2d 720 (2004); *Eickelberger v. Eickelberger*, 93 Ohio App. 3d 221, 638 N.E.2d 130 (1994); and *Cornbleth v. Cornbleth*, 397 Pa. Super. 421, 580 A.2d 369 (1990) (cases allowing offset without discussion of *Hisquierdo*).

In *Hisquierdo*, the U.S. Supreme Court held that in dissolution proceedings, a wife did not have a community property interest in her husband's expectation of receiving railroad retirement benefits. The Court, in so holding, expressly pointed to the similarities between the railroad retirement benefits and benefits under the Social Security Act, including the fact that the laws providing for both forms of benefits specifically prohibited the assignment of the benefits through garnishment, attachment, or other legal process. The Court noted that Congress, "[c]oncerned about recipients who were evading support obligations and thereby throwing children and divorced spouses on the public dole,"

passed an exception for reaching Social Security benefits to satisfy a legal obligation for child support or alimony. *Hisquierdo v. Hisquierdo*, 439 U.S. at 576. However, the Court emphasized that the statute, at the same time, specifically stated that " 'alimony . . . does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with *any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.* ' " (Emphasis supplied.) 439 U.S. at 577, quoting Pub. L. No. 95-30, tit. V, § 501(d), 91 Stat. 160 (1977).

The Court concluded that Congress had decided upon a delicate statutory balance in which it fixed an amount it thought appropriate to support an employee's old age and to encourage the employee to retire. In deciding how finite funds were to be allocated, Congress chose not to allow diminution of that fixed amount by the spouse for whom the fund was not designed. The Social Security Act provides a specific limited avenue for divorced persons to obtain a share of the former spouse's benefits. See 42 U.S.C. § 402(b)(1)(A) through (D) and (c)(1)(A) through (D) (2000).

The Court in *Hisquierdo* specifically rejected the wife's argument that even if a direct allocation of her former husband's railroad retirement benefit would be contrary to the statutory benefit scheme, she should still be entitled to an offsetting award of presently available community property to compensate her for her interest in the expected benefits. The court explained: "An offsetting award, however, would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 588, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979).

The weight of authority has concluded that an offset of Social Security benefits is prohibited by the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution. Most of these courts, however, especially those in equitable division states as compared to community property states, see *In re Marriage of Brane*, 21 Kan. App. 2d 778, 908 P.2d 625 (1995), have not found a more generalized consideration of Social Security benefits to be an impermissible factor in the overall scheme when making a property division. See, *In re*

*Marriage of Morehouse*, 121 P.3d 264 (Colo. App. 2005); *In re Marriage of Boyer*, 538 N.W.2d 293 (Iowa 1995); *In re Marriage of Brane, supra*; *Bradbury v. Bradbury*, 893 A.2d 607 (Me. 2006); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852 (1997); *Rudden v. Rudden*, 765 S.W.2d 719 (Mo. App. 1989); *Neville v. Neville*, 99 Ohio St. 3d 275, 791 N.E.2d 434 (2003).

The court in *Marriage of Zahm*, 138 Wash. 2d 213, 978 P.2d 498 (1999), concluded that where the trial court neither computed a formal calculation of the value of the husband's Social Security benefits nor offset a formal numerical valuation into the court's property division via a specific counterbalancing property award to the wife, the reasoning in *Hisquierdo* did not apply. The court explained that the antireassignment clause of the Social Security Act did not preclude the trial court from considering a spouse's Social Security income "within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property." 138 Wash. 2d at 222, 978 P.2d at 502. As described by the court in *Neville*, "[a]lthough a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution." *Neville v. Neville*, 99 Ohio St. 3d at 278, 791 N.E.2d at 437. This is especially true when " 'a spouse's social security contributions and ultimate benefits have been increased by the work of the other spouse, and . . . a nonemployed spouse loses spending power after a divorce through the inability to use the other spouse's social security benefits.' [Quoting] 2A Social Security Law and Practice (Flaherty & Sigillo, Eds., 1994), Section 34:67." 99 Ohio St. 3d at 278, 791 N.E.2d at 437.

Other courts, however, have found the distinction between a general equitable consideration and a prohibited mathematically specific offset to be meaningless. These courts have accordingly found impermissible any consideration of Social Security disparity in the property division of divorcing parties. See, e.g., *Cox v. Cox*, 882 P.2d 909 (Alaska 1994); *In re Marriage of Hillerman*, 109 Cal. App. 3d 334, 167 Cal. Rptr. 240 (1980); *In re Marriage of Crook*, 211 Ill. 2d 437, 813 N.E.2d 198, 286 Ill. Dec. 141 (2004); *Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916 (1996); *English v. English*, 118 N.M. 170, 879 P.2d 802 (N.M. App.

1994); *Olson v. Olson,* 445 N.W.2d 1 (N.D. 1989); *Swan and Swan,* 301 Or. 167, 720 P.2d 747 (1986); *Reymann v. Reymann,* 919 S.W.2d 615 (Tenn. App. 1995). In *In re Marriage of Crook,* the court explained:

> Instructing a trial court to "consider" Social Security benefits . . . either causes an actual difference in the asset distribution or it does not. If it does not, then the "consideration" is essentially without meaning. If it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse to compensate for the anticipated difference. This works as an offset meant to equalize the property distribution.

211 Ill. 2d at 451, 813 N.E.2d at 205, 286 Ill. Dec. at 148.

■ We conclude that the anti-assignment clause of the Social Security Act and the Supremacy Clause of the U.S. Constitution prohibit a direct offset to adjust for disproportionate Social Security benefits in the property division of a dissolution decree.

## CONCLUSION

We find no abuse of discretion in the property division ordered by the trial court. Accordingly, we affirm.

AFFIRMED.