IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SMITH V. SMITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHANE A. SMITH, APPELLANT,

V.

DEBRA K. SMITH, APPELLEE.

Filed November 29, 2016.    No. A-15-1234.

Appeal from the District Court for Red Willow County: JAMES E. DOYLE IV, Judge. Affirmed and remanded with directions.

Patrick M. Heng, of Waite, McWha & Heng, for appellant.

Kevin D. Urbom, of Urbom Law Offices, P.C., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Shane A. Smith and Debra K. Smith were married in August 1994, and almost 21 years later the district court for Red Willow County entered a decree dissolving that marriage. Shane appeals the district court's determinations related to certain child support worksheet deductions, alimony, his firefighter's retirement plan, a marital equalization judgment, and the court's failure to make an adjustment to the marital estate due to Debra's unilateral decision to claim both their children on her 2014 tax return. We affirm, but remand with directions to determine alternatives related to the marital equalization judgment.

## II. BACKGROUND

During their marriage, Shane and Debra had two children, Christopher and Caitlyn. At the time of trial in March 2015, Christopher was 16 and Caitlyn was 14; both testified, in addition to

- 1 -

other witnesses. A decree dissolving the marriage was entered on July 2, 2015. Legal and physical custody of the parties' children was awarded to Debra and a parenting plan was provided setting forth details for regular and holiday parenting time, among other parenting matters. Shane was ordered to pay child support of $1,133 per month for two children, and the court concluded the evidence did not support an alimony award. The parties' marital assets and debts were divided, and this left Shane owing Debra a marital equalization judgment of $50,902.40. Shane was awarded the right to claim one child as a dependency exemption and for tax credit purposes commencing with his 2015 tax return.

Both parties filed a motion for new trial on July 8, 2015. On November 30, the district court entered an order denying Shane's motion (related to the treatment of his firefighter's pension as a marital asset), but granted Debra's motion (related to child support and alimony). The subsequent order amended the decree by (1) making adjustments to Shane's retirement deductions which resulted in Shane's child support obligation increasing from $1,133 to $1,204 per month and (2) striking the previous award of no alimony and replacing it with an alimony judgment of $800 per month for 84 months in favor of Debra and against Shane. Shane appeals.

## III. ASSIGNMENTS OF ERROR

Restated, Shane assigns that the district court erred by: (1) sustaining Debra's motion for new trial; (2) (a) determining Shane's firefighter's retirement account was a marital asset and (b) entering a lump sum judgment against Shane instead of entering a qualified domestic relations order; and (3) failing to take into account, for purposes of the equitable distribution of property, Debra's unilateral decision to claim both children as deductions on her 2014 tax return.

## IV. STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015). This standard of review applies to the trial court's determinations regarding custody, child support, the division of property, alimony, and attorney fees. *Id*.

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

## V. ANALYSIS

### 1. DEBRA'S MOTION FOR NEW TRIAL

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

The July 2, 2015, decree ordered Shane to pay child support of $1,133 per month for two children. The child support worksheet attached to the decree reflected various deductions from Shane's income, including "FICA - Social Security" for $333.75 and "Retirement" for $215.32.

The decree also stated, "The court considered the factors pertinent to an award of alimony and finds the evidence does not support an award of alimony and none is ordered."

Debra's motion for new trial does not set forth any specific statutory authority to support her request for a new trial. Rather, the motion simply asserts, with regard to child support, that the court had deducted $333.75 for Social Security from Shane's income when calculating child support when Shane did not pay into Social Security, and the court deducted $215.32 for retirement when the evidence showed that Shane made elective deferrals of $4,185 to a 401K plan voluntarily, and that these deferrals were not mandatory. With regard to the alimony issue, the motion mentions the district court's decision to award no alimony when this was a 21-year marriage and that there was a "substantial disparity in the earning capacity of the parties."

The district court sustained Debra's request for relief on both matters and amended the decree with regard to child support and alimony; Shane has assigned error as to both amendments. His argument regarding both amendments is the same; he claims the district court failed to identify any ground within Neb. Rev. Stat. § 25-1142 (Reissue 2008) upon which a new trial could be granted. In relevant part, § 25-1142 states, "A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court." The statute goes on to state that the verdict, report, or decision shall be vacated and a new trial granted "for any of the following causes affecting materially the substantial rights of such party[.]" Eight "causes" are then set forth and include, in relevant part: (1) irregularity in the proceedings; (2) jury or prevailing party misconduct; (3) accident or surprise; (4) excessive damages; (5) error in assessment of recovery amount if action is upon a contract or for the injury or detention of property; (6) the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law; (7) newly discovered evidence; and (8) error of law occurring at trial and excepted to by the party requesting a new trial. See § 25-1142(1)-(8).

As to the alimony matter, Shane states, "In reaching its decision to reverse itself, the trial court gives no indication of its reason for reversal other than it reexamined the evidence and made its findings in Exhibit 'E' to its Order." Brief for appellant at 12. Shane adds that Exhibit E is an analysis of factors pertinent to alimony, and "[t]his is precisely what the trial court's order in its original Decree indicated it had already done." *Id*. at 13. Shane argues that the court's order "is silent as to the statutory authority it is relied [sic] upon to grant a Motion for New Trial on the issue of alimony[,]" and that [t]he language of the statute is very clear that not only does the trial court do a reexamination of the issues of fact, but that a decision shall only be vacated for one of the causes set forth within the statute." *Id*. Shane says the court failed to point to any criteria in § 25-1142 which would allow "going from a no alimony award to an alimony award." *Id*. at 15. As to child support, Shane argues again that the district court "failed to set forth which of the criteria within § 25-1142 that it was relying upon in entering its Order" granting the motion for new trial. *Id*. at 16.

As to the amendments made to alimony and child support, Shane seems to be suggesting that the district court could not change its mind upon reexamination of the facts and consideration of applicable legal principles without specifically setting forth which of the specific "causes" set forth in § 25-1142 the court relied upon to change its decision. Debra counters that her motion was filed within 10 days of the entry of the decree, and the trial court "could consider the motion as a

motion to alter or amend," which would allow the district court the opportunity to "correct mistakes in the original decree." Brief for appellee at 13.

We agree with Debra that the motion and the district court's action align more closely with a reconsideration of the evidence and an alteration or amendment to the original decree. See *Allied Mutual v. City of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005) (motion for new trial similar to motion for reconsideration is treated as motion to alter or amend judgment pursuant to Neb. Rev. Stat. § 25-1329).

The Nebraska Supreme Court has held that "a postjudgment motion must be reviewed based on the relief sought by the motion, not based upon the title of the motion." *Allied Mutual v. City of Lincoln*, 269 Neb. at 638, 694 N.W.2d at 838. Further, we may treat a motion for new trial as a motion to alter or amend the judgment "[w]hen the statutory basis for a motion challenging a judgment on the merits is unclear." *Id*. As noted above, no statutory authority was set forth in Debra's motion for new trial, nor Shane's, for that matter. Our Supreme Court has also stated that "to qualify for treatment as a motion to alter or amend the judgment, the motion must be filed no later than 10 days after entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment." *Weeder v. Central Comm. College*, 269 Neb. 114, 119, 691 N.W.2d 508, 513 (2005). When considering a motion for new trial in *Weeder*, our Supreme Court observed that the motion in that case contained the language "'reexamine its decision to dismiss . . . and reinstate the action as previously filed,'" and concluded that the "language seeks substantive alteration of the judgment," and "qualifies as one to alter or amend the judgment under § 25-329[.]" *Weeder*, 269 Neb. at 120, 691 N.W.2d at 513.

The district court had the authority to reconsider its July 2, 2015, decree, since substantive alteration of the judgment was sought by Debra and a motion requesting such alteration had been timely filed. Shane's argument on appeal as set forth in his brief, and confirmed at oral argument, is limited to challenging the district court's authority to amend the decree under § 25-1142; he did not assign as error that the court abused its discretion by awarding $800 per month in alimony, nor did he assign as error that the court abused its discretion by eliminating the challenged deductions when calculating child support. We have therefore limited our review to the errors assigned and argued and find no abuse of discretion by the district court in exercising its authority to amend the decree.

## 2. FIREFIGHTER RETIREMENT ACCOUNT

Shane assigns as error that "his retirement account/defined contribution plan is a substitute for Social Security and that at least a majority portion of Shane's retirement account should not be included in the marital estate." Brief for appellant at 17. Shane complains that the "trial court took the entire $137,000.00 retirement fund, plugging it into the marital estate and making a division of the marital assets including the exact valuation of Shane's retirement account." *Id*. at 19. Shane also asserts that in the event the retirement account must be included in the marital estate, then the district court abused its discretion by entering an equalization judgment of $50,902.40 when "[i]t is clear from the record that the only asset available to Shane to satisfy the property equalization payment is his retirement account[.]" *Id*. at 23. Shane requests that we remand this issue to the district court "with instructions to the trial court to order Shane to pay his obligation through a

[qualified domestic relations order.]" *Id*. We consider first the characterization of Shane's retirement account as a marital asset, followed by Shane's request for an equalization of the marital estate through a qualified domestic relations order (QDRO).

(a) Marital asset

After the parties had filed their appellate briefs with this court, our Supreme Court released an opinion specifically addressing the characterization of a firefighter's retirement pension. In *Lorenzen v. Lorenzen*, 294 Neb. 204, 883 N.W.2d 292 (2016), a firefighter employed by the city of Lincoln, Nebraska, similarly did not pay Social Security taxes, and like Shane, contributed instead to a retirement pension system administered by the city. The firefighter argued that because his wife would be eligible for Social Security benefits and he would not, the portion of the pension plan attributable to contributions he had made in lieu of Social Security should not be considered in the division of marital property. The firefighter claimed that "the only portion of the pension plan that should be divided between the parties was the portion attributable to the optional contributions he had made in excess of the Social Security rate during the marriage." *Id*. at 206-07, 883 N.W.2d at 294. The Supreme Court affirmed the district court's treatment of the entire marital portion of the pension as an asset of the marital estate.

In reaching its decision in *Lorenzen*, our Supreme Court discussed the general standards relevant to property division, including the three-step process involving: (1) classifying the property as marital or nonmarital; (2) valuing the marital assets and marital liabilities; and (3) calculating and dividing the net marital estate between the parties. See *id*. The court iterated that as a general rule, all property accumulated and acquired by either spouse during a marriage is part of the marital estate, and as applied to pensions, only the portion of a pension earned during a marriage is part of the marital estate. *Id*. Although there are exceptions, generally, amounts added to and interest accrued on such pensions or retirement accounts which have been earned during the marriage are part of the marital estate. *Id*. Contributions to pensions before marriage or after dissolution are not assets of the marital estate. *Id*.

The court also referred to *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47 (2006), where it specifically noted that federal law preempts state law with regard to the distribution of Social Security benefits, and that such benefits are not subject to direct division in a dissolution proceeding. *Lorenzen*, *supra*. And even without these federal law prohibitions, "Social Security benefits likely would not be considered marital property under Nebraska law, because their receipt and value are purely speculative . . . participants in the Social Security program have only an expectancy of benefits and not an accrued property right." *Lorenzen v. Lorenzen*, 294 Neb. at 213-14, 883 N.W.2d at 298. The court contrasted this with a participant's legal rights to benefits in a pension plan. "Because of these differences between Social Security benefits and pension plans, it is not appropriate to equate a portion of a pension plan as being the equivalent of Social Security benefits and to therefore exclude it from the marital estate." *Id*. at 214, 883 N.W.2d at 299. The court affirmed the district court's treatment of the marital portion of the firefighter's pension plan as marital property.

*Lorenzen*, *supra*, controls here. Shane's firefighter retirement plan is a marital asset. The evidence in this case established that Shane began working as a firefighter after his marriage to

Debra. It was not an abuse of discretion for the district court to include its entire value in the marital estate.

(b) Lump Sum Judgment

Since the district court properly included Shane's retirement account in the marital estate, we now address Shane's assigned error regarding the court's award of an equalization judgment of $50,902.40 against Shane and in favor of Debra. Shane does not dispute the equalization amount. Rather, he argues that "[i]t is clear from the record that the only asset available to Shane to satisfy the property equalization payment is his retirement account[.]" Brief for appellant at 23.

Appendix D to the decree sets forth the district court's determination of marital assets and liabilities. The primary marital asset awarded to Shane was his retirement account valued at $137,000. There were two primary marital assets awarded to Debra: the marital residence valued at $92,000 (encumbered by a mortgage for $66,884) and her retirement account valued at $7,246.96. Shane was ordered to take responsibility for $4,524.47 of the marital debt; Debra was only obligated for $536.34 of the marital debt. There is nothing reflected in the parties' marital assets to suggest Shane would have the means to pay a $50,902.40 judgment other than by taking out a loan. He had only $500 in his checking and savings accounts, and his vehicle is secured by a loan almost equal to its value. Further, this court's review of exhibit 4 reveals no separate premarital property or inheritances other than some miscellaneous personal property valued at $150. Therefore, while the equalization judgment is supported by the record, we conclude the district court abused its discretion by making the entire judgment due, presumably by its silence otherwise, upon entry of the decree. Given Shane's lack of assets and limited monthly resources in light of his child support and alimony obligations, some consideration must be given to a payment schedule or perhaps an alternative means of equalizing the marital estate by apportioning some of Shane's retirement account over to Debra through a QDRO as suggested by Shane on appeal.

We recognize, however, that neither at trial nor at the hearing on both parties' motions for new trial, did Shane ask the district court to consider using a QDRO to apportion Shane's retirement plan. Rather, at the hearing on his motion for new trial, Shane continued to argue the retirement plan was not marital, and further, if he was ordered to cash-out $50,000 from his retirement funds, there would be a 10-percent penalty plus income taxes assessed. The court stated, "How he pays for that is up to him. I don't require him to cash-out his retirement." Shane's response was that this would be the only way he could pay the judgment because he had no assets from which he could borrow money.

Debra acknowledges that a QDRO would "minimize tax consequences to Shane," brief for appellee at 16, but that Shane failed to address whether he could borrow against the retirement account, and further, the use of a QDRO was never raised either at trial or on the motion for new trial, and therefore the district court never had the opportunity to address it. However, because we have concluded it was an abuse of discretion to enter a judgment against Shane for $50,902.40 without consideration of how he would pay such a large sum immediately, it would be appropriate for the district court to consider the use of a QDRO to equalize the marital estate in addition to any other alternatives for accomplishing the equalization, so long as consideration is given to Shane's

limited assets, his net income after meeting his child support and alimony obligations, and his own basic subsistence needs.

We see that Neb. Rev. Stat. § 16-1038(1) (Supp. 2015) does allow benefits under the "Firefighters Retirement System Fund" to be assigned so long as such assignment complies "with the directions set forth in a qualified domestic relations order meeting the requirements of section 414(p) of the Internal Revenue Code." However, there is no evidence in the record regarding whether or not the retirement system fund would permit a specific dollar amount to be allocated to a divorced spouse--in this case, $50,902.40--or whether such an assignment must be made through a percentage allocation only. We leave these matters for consideration by the district court and the parties on remand.

### 3. DEBRA'S 2014 TAX RETURN

Shane argues that Debra unilaterally, without notice to Shane, claimed both children as deductions on her 2014 tax return and received a $7,744 refund, and that "the trial court erred in not making an adjustment to the marital estate for Debra's utilization of the 2014 tax refund as her personal mortgage payment." Brief for appellant at 25. Debra acknowledged claiming both children on her 2014 tax return and receiving a $7,700 refund from her federal return and $758 from her state return. She testified that all $7,700 of the federal refund went towards the parties' house mortgage held by USDA.

The property statement received as exhibit 4 was signed by both parties in November 2014. At that time, Shane represented that the USDA house mortgage balance was $70,493; Debra represented it was $79,929. Exhibit 9 is a statement from "USDA Rural Development Centralized Servicing Center" dated March 25, 2015; it shows a mortgage balance of $66,884.92. Both parties acknowledged that some payments had not been made in 2014, and Shane acknowledged that the monies "captured by the federal government" from Debra's tax refund also benefitted Shane insofar as it got the "mortgage paid up[.]" Further, Shane indicated that if they had filed their taxes together, "whatever refund we got would do the same thing[,]" which, Shane said, is what they did with their 2013 tax refund of $3,500.

Shane does not dispute that the refund was applied to the house mortgage, but appears to be arguing that only Debra personally benefitted from the reduction in the principal on the house as a result. While it is true Debra was awarded the house, and there was a reduction to the house mortgage balance between November 2014 and March 2015 likely attributable, in significant part, to Debra's 2014 federal tax refund being applied to the loan, we do not see how this failed to benefit Shane as well. The district court's table of marital assets and liabilities shows the reduced mortgage balance of $66,884, not the higher balances represented by both parties in their November 2014 property statement. This lower mortgage balance resulted in Debra's total marital debts being less, which resulted in her net marital estate being higher. The higher Debra's net marital estate, the less equalization owed by Shane to Debra. The application of the tax refund to the house mortgage appropriately benefited both parties, not just Debra.

Further, as previously indicated, when the parties jointly filed a tax return for 2013, their refund was only $3,500. By Debra claiming the children and filing separately in 2014, the parties benefited by her refund of $7,700 being applied to their house mortgage. This was more than

double the refund from the prior tax year. The district court elected to take no action regarding Debra's decision to claim both children as deductions on her 2014 tax return other than to reflect the reduced mortgage balance when calculating the values included in the marital estate. The district court did not abuse its discretion in choosing to deal with Debra's 2014 tax filing in this manner.

## VI. CONCLUSION

We affirm the district court's determination of the marital equalization amount, but remand for further consideration of alternative means to effectuate such equalization as discussed herein. We otherwise affirm the district court's amended decree.

AFFIRMED AND REMANDED WITH DIRECTIONS.