**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4953-18

BRIAN LEE ROBBINS,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

CAROLE ANNE DIONNE
f/k/a CAROLE ANNE ROBBINS,

    Defendant-Appellant/
    Cross-Respondent.

_____

Argued November 2, 2020 – Decided February 26, 2021

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1098-14.

Steven P. Monaghan argued the cause for appellant/cross-respondent (Law Office of Steven P. Monaghan, attorneys; Jeanne Screen, of counsel and on the briefs).

Brian Lee Robins, respondent/cross-appellant, argued the cause pro se.

PER CURIAM

Defendant Carole Anne Dionne and plaintiff Brian Lee Robbins divorced in June 2016. Since the entry of their judgment of divorce (JOD), the parties have engaged in extensive litigation regarding a variety of post-judgment issues. Here, defendant appeals from a June 28, 2019 Family Part order denying a motion for reconsideration. Specifically, defendant seeks reconsideration of the wording of the JOD, rejection of the qualified domestic relations order (QDRO) prepared by her expert, and the amount of life insurance plaintiff must maintain to secure his pension and alimony obligations. Plaintiff cross-appeals, primarily challenging the denial of his request for counsel fees. We affirm.

I.

The parties married in 1996. Two children were born of the marriage: a son, born in 1998, and a daughter, born in 2000. Plaintiff has worked for the State of New Jersey as an information technology specialist since 1983 and is a member of the Public Employees Retirement System (PERS). Defendant also worked for the State, as a computer programmer, for approximately nine years, before resigning from her full-time position to devote her attention to the family. Because defendant only contributed to the pension system for nine years before retiring, she was not yet vested in her pension and therefore only received the

2

return of her contributions. In 2005, medical issues rendered defendant disabled. She has collected Social Security disability benefits since 2006.

In April 2014, plaintiff filed for divorce. Defendant retained counsel, who filed an answer and counterclaim on her behalf; however, by the time of trial, defendant was self-represented, while plaintiff remained represented by counsel.

At a one-day trial on June 14, 2016, each party testified, and sixteen documents were received in evidence. Plaintiff testified that his pension contributions, as of June 30, 2014, totaled $81,810, and that the marital portion of his pension was seventeen years and four months, plus eighteen months of purchased-back service credit. Plaintiff explained that if he died before his retirement and before his pension went into pay status, the payout would be the return of his contributions; however, if plaintiff's death occurs with his pension in "pay status," he would have the opportunity to select "Option 4." He explained that, upon his death, Option 4 "provides survivor benefits to continue that same amount or percentage . . . for the rest of [defendant's] life."

The trial judge appointed Lois Fried, CPA to determine the value of fifty percent of the marital portion of plaintiff's pension. The judge explained that he was "going to require that the plaintiff provide a life insurance policy" to cover the value of defendant's share of the pension. The appraisal was to determine

A-4953-18

the amount of the life insurance necessary to provide security for defendant's interest in plaintiff's pension.

On June 29, 2016, the trial judge issued the JOD and ordered plaintiff to obtain a valuation of his pension from Ms. Fried. The judge ordered plaintiff to pay alimony of $500 per week and required him to maintain life insurance of $300,000 to secure his alimony obligation; however, he permitted the amount of insurance to decrease as plaintiff's "obligation for alimony decreases."

Before signing the JOD, the judge reviewed it on the record in the presence of counsel (by this point, defendant again had retained counsel). Defendant's attorney raised several issues with the proposed JOD, including this sentence: "Plaintiff shall name [d]efendant as survivor beneficiary of 50% of the marital portion of his pension selecting Option 4." Defendant's attorney expressed concern about whether Option 4 would cover defendant's interest and wanted specific language added. Ultimately, the judge crossed out the phrase "selecting Option 4."

Later that day, plaintiff's attorney wrote to Ms. Fried "on behalf of both parties" to obtain a valuation of defendant's share of plaintiff's PERS pension benefits. In addition, plaintiff's attorney wrote that defendant's share of the pension "is 50% of 17 years and 4 months . . . plus an additional one and a half

4

years due to a pension buy back during the marriage[,]" and "[t]he purpose of the valuation is to assist us to determine how much life insurance [defendant] should carry . . . in case he dies before the pension goes into pay status[.]"

On July 19, 2016, plaintiff's attorney wrote a follow-up letter to Ms. Fried, indicating that plaintiff was requesting that the appraisal be done as a "schedule" because it would seem that "as [defendant's] life expectancy reduces . . . the amount of life insurance should also reduce."  The JOD does not mention such a schedule.[1]

Thereafter, defendant filed a motion for reconsideration of the JOD, and plaintiff followed with a cross-motion for reconsideration.  Notably, the trial judge denied plaintiff's "request that he shall have no obligation to pay for life insurance to secure [d]efendant's interest in her portion of his . . . pension;" in addition, the judge denied plaintiff's request for defendant to "contribute $6,083 towards his counsel fees and costs[.]"  However, the judge granted plaintiff's "request that [p]laintiff shall select Option 4 on his pension to provide that

---

[1]  While Ms. Fried complied with plaintiff's request for a schedule, plaintiff's expectation that the amount of insurance would decline over time was not realized.  Ms. Fried's schedule called for the amount of life insurance to secure defendant's interest in plaintiff's pension to increase each year.

A-4953-18

[d]efendant's pension payments shall not be reduced if [p]laintiff dies while the pension is in pay status."

Ms. Fried completed her appraisal and report, dated July 26, 2016, and sent it to the parties. In the first paragraph, the report stated that it "is to be used only to determine the increasing term life insurance needed to secure [defendant's] interest in [plaintiff's] entitlement through the date of his retirement." The report provided a schedule representing the various amounts of life insurance required to secure defendant's interest in plaintiff's pension as of August 1 of 2016 through 2028, the date anticipated for plaintiff's retirement. Ms. Fried calculated the varying amounts of life insurance based upon several assumptions, including the date of retirement, plaintiff's final salary, and marginal tax rates. The report contained two columns with different scenarios, Column A assuming defendant would be responsible for the cost of survivor benefits and Column B assuming the cost of survivor benefits would be shared pro rata by the parties. Based upon Column B, plaintiff would need to provide life insurance of $139,675.04 in 2016, with that sum increasing to $188,486.22 by 2028, the last year plaintiff expected to work before retirement.

By this time, the parties agreed to hire Ms. Fried to prepare a draft qualified domestic relations order (QDRO). However, it appears Ms. Fried's

6

report undermined defendant's confidence in her work. Defendant understood Paragraph 10 of the JOD to direct Fried to appraise the value of the marital portion of the pension in one lump sum to determine the appropriate level of life insurance. Defendant believed Ms. Fried was working for plaintiff, rather than both parties, because she followed plaintiff's direction to prepare a schedule and defendant was not included in many of the conversations between plaintiff and Ms. Fried.

Lacking confidence in Ms. Fried, defendant retained Pension Evaluators at Troyan, Inc. (Troyan) to prepare an alternate QDRO. Defendant's attorney sent a draft QDRO prepared by Troyan to plaintiff's attorney for review. However, the parties could not agree which QDRO to sign.

On September 18, 2017, defendant filed a post-judgment motion seeking, among other things, to implement the Troyan QDRO. On October 16, 2017, plaintiff filed a cross-motion seeking, among other things, to implement the Fried QDRO. Since the trial judge was no longer assigned to Burlington County, the matter was reassigned to a different judge (the motion judge), who presided over all post-judgment proceedings thereafter.

On November 3, 2017, the motion judge referred the parties to attend economic mediation to address disputed matters regarding the QDRO, life

A-4953-18

insurance, and other economic issues. After mediation proved unsuccessful, the judge held a plenary hearing to address these issues. By the time of this hearing, both parties were self-represented.

At the plenary hearing, which began on February 1, 2019, defendant presented testimony from Carter Troyan, a Troyan actuary. Mr. Troyan explained that the Troyan QDRO set forth the marital fraction in accordance with the Marx[2] formula. He further explained that the Fried QDRO did not calculate the marital fraction with the "the true Marx formula," and "most importantly[,] it doesn't call for the retirement allowance, which would call for immediate rejection by the plan of this order." He added that the Fried QDRO did not account for the possibility of plaintiff becoming disabled or provide for coverage for group life insurance.

Plaintiff objected to the Troyan QDRO, contending that defendant receiving a portion of pre-retirement death benefits would constitute "double dipping." Under the trial judge's ruling, defendant would already receive life insurance to cover her full interest in his pension should he die before commencing benefits. Thus, if plaintiff died before commencement of benefits,

---

[2] See Marx v. Marx, 265 N.J. Super. 418 (Ch. Div. 1993) (setting forth a formula for allocating the marital share of a deferred distribution pension).

A-4953-18

defendant would receive the life insurance covering her interest in his pension and the percentage of contributions.

At the conclusion of the hearing, on March 8, 2019, the motion judge ordered plaintiff to maintain his State group life insurance, while employed, "with defendant as the only beneficiary . . . as security for [his] alimony" obligation. He also ordered plaintiff to "keep [his] Genworth life insurance policy active," pending further review. Additionally, the judge ordered the parties to use the Troyan QDRO; however, the judge vacated this order on April 1, 2019, after determining the Troyan QDRO did not comply with the JOD.

On April 18, 2019, defendant filed a motion for reconsideration of the April 1, 2019 order, asking the judge to reconsider the order as it related to the equitable distribution of plaintiff's pension and life insurance issues; in turn, plaintiff filed a cross-motion addressing the same issues, and seeking counsel fees. The judge heard oral argument on the cross-motions on May 31 and June 17, 2019. At the hearing, the motion judge expanded on his decision concerning the QDRO, stating "[t]he only thing that [the trial judge] ordered was the coverture portion, not the Marx formula. The Marx formula has to specifically be ordered by the [c]ourt. There was no order[.]" The judge also commented that the group life insurance was for the alimony, the Genworth policy was for

9

A-4953-18

the pension, but the JOD did not expressly address plaintiff's group life insurance.

Defendant argued that plaintiff was required to secure defendant's portion of his pension (if he dies before pay status) and that Mr. Troyan told her if plaintiff was utilizing his group life insurance to satisfy that obligation, it must be included in a QDRO to be recognized by the State. Plaintiff acknowledged that he must maintain life insurance to cover defendant's interest in his pension. Under plaintiff's calculations, his life insurance obligation for pension and alimony together totaled $390,000. To cover this amount, plaintiff requested that he be permitted to cancel his Genworth policy and name defendant as the beneficiary on the State group life insurance in the amount of $330,000. When the motion judge asked plaintiff how he would satisfy the balance of his obligation, plaintiff stated he would designate a portion of his contributions to defendant, in lieu of life insurance, to satisfy the gap from $330,000 to $390,000.

At the conclusion of the June 17, 2019 hearing, the motion judge issued an oral decision denying defendant's request to reconsider his decision selecting the Fried QDRO over the Troyan QDRO. The judge explained that the Fried QDRO complied with the trial judge's JOD, while that the Troyan QDRO inserted noncomplying terms. With respect to plaintiff's cross-motion for

10

reconsideration, the judge, among other things, granted, in part, plaintiff's request to reconsider the order requiring him to maintain the Genworth policy. In so doing, the judge ruled that plaintiff is responsible to maintain insurance coverage as security for his alimony obligation and defendant's interest in his pension; however, he relieved plaintiff of his obligation to continue the Genworth policy. The judge required plaintiff to "delineate in writing how the insurance is to be divided between alimony and pension security."

The motion judge issued a written order on June 28, 2019, confirming the rulings he made at the June 17, 2019 hearing and in his June 24, 2019 oral opinion. These cross-appeals followed.

On appeal, defendant argues the motion judge erred in denying her motion for reconsideration 1) by not formally amending the JOD; 2) by ruling that the draft QDRO prepared by Ms. Fried should be implemented rather than the draft prepared by Troyan, Inc.; and 3) by not requiring plaintiff to obtain sufficient life insurance to cover defendant's interest in plaintiff's pension and plaintiff's alimony obligation.

On his cross-appeal, plaintiff disputes the issues raised by defendant in her appeal; in addition, he argues the motion judge erred in failing to award him

A-4953-18

$16,169.45 in counsel fees, "primarily on the basis of [defendant's] BAD FAITH motive."

## II.

Reconsideration is "a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid.]

Motions for reconsideration are governed by Rule 4:49-2, which requires the moving party to explicitly identify the grounds for the motion to fit within that "narrow corridor" where reconsideration is appropriate:

> The motion shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.

See also Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008); Cummings v. Bahr, 295 N.J. Super. 374, 384-385 (App.

12

Div. 1996). "Said another way, a litigant must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401.

Defendant contends there are two significant omissions in the JOD: 1) language awarding fifty percent of the marital portion of plaintiff's pension to defendant and 2) language ordering plaintiff to obtain a life insurance policy to secure defendant's interest in his pension. The JOD's omission of such language, defendant argues, runs counter to the trial court's express intent and rulings.

First, we agree the trial judge intended for plaintiff to secure defendant's interest in his pension with a life insurance policy. This is apparent from the judge's own words at trial and in deciding post-judgment motions. See Heinl v. Heinl, 287 N.J. Super. 337, 353 (App. Div. 1996) (holding that "an oral pronouncement of a judgment in open court on the record constitutes the jural act"). When the judge ordered Ms. Fried's appraisal of the marital share of plaintiff's pension, he explained,

> I'm going to require that the plaintiff provide a life insurance policy, perhaps term, depending on his life expectancy[,] to secure that amount should he predecease [defendant]. . . . Whatever the amount is[,] he's going to have to cover it to ensure that that

13

pension amount exists should he predecease his retirement.

While the JOD instructs plaintiff to "obtain a valuation of his pension from . . . Fried," it fails to expressly state the judge's intent behind the appraisal – to determine the amount of life insurance plaintiff must provide to secure defendant's interest in his pension. Furthermore, the trial judge denied plaintiff's "request that he shall have no obligation to pay for life insurance to secure [d]efendant's interest in her portion of his . . . pension" because he intended for plaintiff to do just that.

Defendant did not appeal the JOD. Nevertheless, because of the omission of explicit language regarding the life insurance issue, the motion judge appropriately and correctly addressed this issue in a post-judgment order, consistent with the obvious intent of the trial judge, based upon the trial judge's rulings at the conclusion of trial testimony, and his rulings in the one post-judgment motion he decided. Addressing this issue, the motion judge confirmed plaintiff's obligation to provide life insurance and ruled that plaintiff may reduce his life insurance requirement by the amount of alimony he pays each year; however, the judge also ordered that plaintiff may not decrease the amount of life insurance below $100,000 since "plaintiff is to pay open[-]durational

alimony to defendant"; as such, his alimony obligation "may only be terminated by order of the [c]ourt after a finding of changed circumstances."

We next reject defendant's contention that the motion judge erred when he declined to reconsider the filing of the Fried QDRO instead of the Troyan QDRO. The Fried QDRO complies with state law and the JOD. The motion judge did not abuse his discretion when deciding not to require more. None of the additional provisions in the Troyan QDRO, including the <u>Marx</u> formula, are required by law or the JOD. Defendant even acknowledges in her brief that many provisions in the Troyan QDRO are not in the JOD. Therefore, we find no abuse of discretion and affirm the motion judge's ruling.

Finally, we reject defendant's contention that the motion judge erred when he declined to reconsider his order permitting plaintiff to reduce his life insurance each year as his obligation for alimony decreases. Nor do we see a need to "clean-up" the matter, as requested by defendant, by requiring plaintiff to secure a specific amount of life insurance.

The post-judgment orders are consistent with the JOD and defendant provides no evidence of error. Plaintiff must maintain life insurance to secure defendant's interest in his pension and his alimony obligations and may reduce his requirement for life insurance by the amount of alimony he pays each year.

15

Moreover, plaintiff must name defendant as a beneficiary of an increasing amount of life insurance as recommended by Ms. Fried's report. To secure this amount, plaintiff may use his State group life insurance and assign a portion of his PERS death benefits and return of pension contributions to defendant. We find no abuse of discretion in these rulings and affirm.

III.

On cross-appeal, plaintiff essentially disputes the issues raised by defendant in her appeal; in addition, he argues the motion judge erred in failing to award him $16,169.45 in counsel fees, "primarily on the basis of [defendant's] BAD FAITH motive." We disagree.

We review a trial court's order concerning attorneys' fees under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2007) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). N.J.S.A. 2A:34-23 authorizes family courts to award counsel fees in a matrimonial action after a judge considers "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good faith or bad faith of either party." Chestone v. Chestone, 322 N.J. Super. 250, 255-56 (App. Div. 1999) (quoting N.J.S.A. 2A:34-23). Rule 5:3-5(c) states that a court should consider

nine factors, including "reasonableness and the good faith of the position advanced by the parties[.]"

The motion judge here referenced the factors enumerated in the court rules and found that those factors did not support an award of counsel fees. The judge did not find that defendant acted in bad faith. We discern no abuse of discretion in the judge's determinations. Both parties asserted various claims in post-judgment proceedings, with varying degrees of success. The record does not reflect that either party pursued any claims in bad faith.

To the extent plaintiff's brief raises any additional arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                    A-4953-18