**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1642-22

ANESTIS KARASARIDIS,

    Plaintiff-Appellant,

v.

VOULA CONSTANTARAKOS,

    Defendant-Respondent.

_____

Submitted May 7, 2024 – Decided August 29, 2024

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1338-20.

Berse Law, LLC, attorneys for appellant (Samuel J. Berse, on the briefs).

Abatemarco, Thomlison & Frantz, LLC, attorneys for respondent (Gregory B. Thomlison, on the brief).

PER CURIAM

Plaintiff, Anestis Karasaridis, appeals the post-judgment equitable distribution orders of the Family Part directing apportionment of plaintiff's pension plan by way of a separate interest qualified domestic relations order (QDRO). After a dispute between the parties about interpretation of the pension distribution terms in their matrimonial settlement agreement (MSA), the court appointed an expert to define the type of pension plaintiff possessed and recommend whether the pension should be divided by way of a shared or separate interest. After receipt of the expert report, the court issued an order defining plaintiff's pension plan and directing that it be equitably distributed with defendant Voula Constantarakos, according to the terms of the MSA, as a separate interest.

Plaintiff moved for reconsideration of the order. After denial of reconsideration, plaintiff appeals, arguing that the Family Part erred by issuing its order, based on the opinion of the appointed expert, without discovery and a hearing pursuant to Rule 5:3-3. We reverse and remand for proceedings consistent with the rule and this opinion.

The parties married on July 3, 1999. Their final judgment of divorce (FJOD) was entered on May 12, 2021. They do not share any children. The

parties entered into a marital settlement agreement (MSA) which was incorporated into their FJOD.

Terms of the MSA relevant to this appeal include:

> **6.1** [T]he parties agree to equally divide the marital coverture portion of all retirement accounts along with any gains or losses through the date of distribution. As such, except as otherwise specifically stated herein, [defendant] shall receive [fifty percent] of the value of [plaintiff's] retirement accounts from the date of marriage (July 3, 1999) or the commencement date of [plaintiff's] participation in each plan (whichever later occurs) through the filing date of the Complaint for Divorce (May 14, 2020), together with any passive appreciation or depreciation on said amounts through the date of the distribution in accordance with the principles enunciated in Marx v. Marx, 265 N.J. Super. 418, 627 A.2d 691 (Ch. Div. 1993). Likewise, except as otherwise specifically stated herein, [plaintiff] shall receive [fifty percent] of the value of [defendant's] retirement accounts from the date of marriage (July 3, 1999) or the commencement date of [defendant's] participation in each plan (whichever later occurs) through the filing date of the Complaint for Divorce (May 14, 2020), together with any passive appreciation or depreciation on said amounts through the date of the distribution in accordance with the principles enunciated in Marx v. Marx, 265 N.J. Super. 418, 627 A.2d 691 (Ch. Div. 1993).
>
> . . . .
>
> **6.3** Pursuant to Paragraph 6.1, [defendant] shall receive [fifty percent] of the marital coverture portion of [plaintiff's] retirement accounts. [Plaintiff] has indicated he has the following retirement accounts:

3

. . . .

D. [**Plaintiff's**] **Qualified Pension Benefit**: The parties agree [plaintiff] has a Qualified Pension Benefit (AT&T Legacy Management Program) through his employer, AT&T. [Plaintiff's] Case Information Statement indicates this account had a value of approximately $257,368.00 as of December 31, 2019. This pension afforded [plaintiff] a monthly annuity payment of approximately $4,220.00 as of December 31, 2019. The parties agree [defendant] shall receive one-half (1/2) of the value of [plaintiff's] Pension Plan as of the date of the Complaint for Divorce, May 14, 2020, together with any passive appreciation or depreciation on said amount through the date of distribution. The parties shall cooperate with one another to provide [defendant] with her one-half share of this account. The parties shall equally share in the cost of a Qualified Domestic Relations Order (QDRO) if same is necessary to provide [defendant] with her one-half share of this account. The parties shall utilize the services of ALLPRO QDRO or any other company mutually agreed by the parties to prepare any such documents. The parties further agree that a loan taken by [plaintiff], if any, against this account shall not affect [defendant's] interest in the foregoing account.

E. **[Plaintiff's] AT&T Pension Benefit Plan**: [Plaintiff] asserts he does not have a defined benefit pension plan as part of his employment with AT&T. [Plaintiff] shall have an affirmative obligation to provide any and all documentation relative to his deferred compensation/pension plans. [Plaintiff] shall also execute an Authorization simultaneously with the signing of this Agreement to permit [Defendant] and her counsel to communicate directly with AT&T, Fidelity, or such brokerage firm who manages the AT&T pension plan so as to obtain all documentation

4

relative to [plaintiff's] deferred compensation pension plan(s). To the extent any defined benefit account is discovered, [defendant] shall receive [fifty percent] of said pension plan from the date of marriage through the date of the Complaint for divorce. The parties shall equally share in the cost of the Domestic Relations Order necessary to prepare the DRO which shall be initiated within [thirty] days of receipt of the pension information. If the Authorization does not provide the requisite documentation, [defendant] shall have limited subpoena power to acquire the documentation from AT&T.

F. The parties intend for [defendant] to receive [fifty percent] of the marital coverture portion of [plaintiff's] retirement accounts pursuant to paragraph 6.1. In the event [plaintiff] has an account which is not specifically listed in the MSA, one-half of the marital portion of same, together with any passive appreciation or depreciation associated with any such account, shall be provided to [defendant]. The absence of any such account being specifically listed herein shall not constitute a waiver on the part of [defendant] as to her interest in same.

**6.4** Pursuant to Paragraph 6.1, [plaintiff] shall receive [fifty percent] of the marital coverture portion of [defendant's] retirement accounts as set forth below:

A. **[Defendant's] New Jersey TPAF Pension**: The parties acknowledge [defendant] has a defined benefit plan known as a Teacher's Pension and Annuity Fund. [Plaintiff] shall receive [fifty percent] of the marital coverture of this account, namely from the date of [defendant's] entry in the plan through the date of the Complaint for divorce on May 14, 2020. ALLPRO QDRO or any other company agreed by the parties shall prepare the requisite DRO to divide the marital

5

coverture [fifty/fifty]. The cost of the DRO shall be shared [fifty/fifty].

. . . .

F. The parties intend for [plaintiff] to receive one-half of all marital accounts. In the event [defendant] has a marital account which is not specifically listed in this MSA, one[-]half of the marital portion of same, together with any passive appreciation or depreciation associated with any such account, shall be provided to [plaintiff]. The absence of any such account being specifically listed herein shall not constitute a waiver on the part of [plaintiff] as to his interest in same.

Following the divorce, the parties began the process of drafting QDROs pursuant to the MSA. The parties could not agree on how plaintiff's pension should be divided. Consequently, plaintiff refused to execute any of the QDROs. Defendant then moved to enforce the equitable distribution of plaintiff's retirement account as a separate interest under the MSA. Plaintiff cross-moved to divide his pension as a shared interest, and for counsel fees.

After the cross-motions were filed, the court held a case management conference on July 15, 2022. The court issued an order the same day appointing Rodney Troyan, Esq. as an expert[1] to advise the court whether: plaintiff's plan

---

[1] The order states plaintiff will pay for two-thirds of the expert's cost while defendant will be pay one-third.

A-1642-22

is a defined benefit plan, a cash balance pension, or a hybrid of the two; plaintiff's pension should be divided via a shared or separate interest; MSA paragraphs 6.3 (D) and (E) guide the parties intentions as to how to divide plaintiff's plan; and the benefits and detriments to each party if the plan is divided as a separate interest versus a shared interest. The order included a statement that the court would "issue a decision on the parties' pending motions."

Troyan issued his expert opinion on August 1, 2022. Based on his analysis of the facts and the relevant law, Troyan opined plaintiff's plan should be considered as a separate plan for purposes of equitable distribution.

On August 22, 2022, rather than filing a motion seeking relief pursuant to Rule 5:3-3, defendant wrote to the court asking that plaintiff's plan be divided as a separate interest consistent with Troyan's opinion. On August 25, plaintiff responded, disputing Troyan's opinion that his pension plan to be divided as a separate interest. In plaintiff's letter to the court, he asked the court to equitably distribute his pension as a shared interest. Plaintiff did not file a motion with the court seeking such relief pursuant to Rule 5:3-3, nor did he notify the court of his intent to retain an expert, seek discovery, or cross-examine Troyan.

Defendant replied on August 26, objecting to plaintiff's application. Several weeks later, on October 3, plaintiff emailed the court seeking a status

report on the matter. Again, plaintiff did not file a motion or affirmatively request a case management conference.

On November 2, the court, without a hearing, issued an order and statement of reasons directing plaintiff's plan be divided by way of a separate interest QDRO. The court found Troyan's report "consistent with both statutory and case law, as well as the underlying MSA and plan documents." The court adopted Troyan's report "in its entirety."

Plaintiff moved for reconsideration, submitting the report of Lois Fried, CPA. Fried opined that dividing the plan as a shared interest would be the most equitable outcome. Defendant opposed reconsideration and sought enforcement of the MSA and the November 2 order. The court heard argument on January 13, 2023 and denied reconsideration, declining to consider plaintiff's expert report. Plaintiff appeals.

We review a trial judge's decision on whether to grant or deny a motion for reconsideration under Rule 4:49-2 (motion to alter or amend a judgment order) for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Wiggins v. Hackensack Meridian Health, 478 N.J. Super. 355, 365 (App. Div. 2024). "The rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider

evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2024).

"Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We will reverse only if we find the trial judge clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). "While an 'abuse of discretion . . . defies precise definition,' we will not reverse the decision absent a finding the judge's decision 'rested on an impermissible basis,' considered 'irrelevant or inappropriate factors,'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571-72 (2002)), or "failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence," ibid. (quoting Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

Plaintiff argues the trial court did not follow Rule 5:3-3, which establishes the process for the court's appointment of an expert in family law matters.

Rule 5:3-3 states in pertinent part:

> **(c)** Economic Experts. Whenever the court concludes that disposition of an economic issue will be assisted by expert opinion, it may in the same manner as provided in Paragraph (a) of this rule appoint an expert to appraise the value of any property or to report and recommend as to any other issue, and may further order any person or entity to produce documents or to make available for inspection any information or property, which is not privileged, that the court determines is necessary to aid the expert in rendering an opinion.
>
>              . . . .
>
> **(f)** Submission of Report. Any finding or report by an expert appointed by the court shall be submitted upon completion to both the court and the parties. At the time of submission of the court's experts' reports, the reports of any other expert may be submitted by either party to the court and the other parties. The parties shall thereafter be permitted a reasonable opportunity to conduct discovery in regard thereto, including, but not limited to, the right to take the deposition of the expert.
>
> **(g)** Use of Evidence. An expert appointed by the court shall be subject to the same examination as a privately retained expert and the court shall not entertain any presumption in favor of the appointed expert's findings. Any finding or report by an expert appointed by the court may be entered into evidence upon the court's own motion or the motion of any party in a manner consistent with the rules of evidence, subject to cross-examination by the parties.

A-1642-22

**(h)** Use of Private Experts. Nothing in this rule shall be construed to preclude the parties from retaining their own experts, either before or after the appointment of an expert by the court, on the same or similar issues.

Specifically, plaintiff contends that the court erred by issuing its own expert report and then adopting it, without giving plaintiff an opportunity to conduct discovery and submit his own expert. Plaintiff further argues that the trial court committed further error by not requiring its own expert to testify, so that plaintiff could cross-examine the expert as required by Rule 5:3-3(g). We agree.

The language of Rule 5:3-3(f) and (g) is clear. Pursuant to subsection (f), the court shall permit the parties a reasonable opportunity to conduct discovery as to the court's expert, including opportunity to take the expert's deposition. Subsection (g) provides the admission of the court-appointed expert's opinion into evidence is expressly subject to "cross-examination by the parties."

While plaintiff failed to take affirmative steps to assert his right to discovery or cross-examination pursuant to Rule 5:3-3, the court erred by not taking affirmative steps to implement the specific requirements of the rule. In the vacuum which existed between August 1, 2022 and November 2, 2022, the record shows the parties wrote or emailed the court to no avail. The trial court

did not call a case management conference, nor issue a case management order establishing incorporating a discovery schedule and hearing date.

The court's November 2, 2022 order that equitable distribution of plaintiff's pension would be conducted as a separate interest, was issued without a hearing, and therefore, without an opportunity for cross-examination by plaintiff. The court relied on Troyan's report in making its findings, adopting the expert's report in its entirety. We express no opinion on what impact discovery, cross-examination, and plaintiff's production of an opposing expert would have had on the court's conclusion, but Rule 5:3-3 requires that plaintiff be given the opportunity to use these tools. Only after compliance with Rule 5:3-3 should the trial court have made its findings and issued an order concerning equitable distribution of plaintiff's pension.

We conclude the trial court misapplied Rule 5:3-3 by not affording plaintiff the opportunity for discovery and issuing its order of November 2, 2022 without conducting a hearing where its appointed expert could testify and be subject to cross-examination. The harm was compounded on reconsideration when the trial court improperly rejected consideration of plaintiff's opposing expert report.

We reverse and remand for further proceedings. The trial court shall conduct a case management conference pursuant to Rule 5:3-3 within forty-five days, and then shall issue a case management order. The case management order shall include an expedited discovery schedule consistent with Rule 5:3-3(f) and set a hearing date for testimony and cross-examination of the court appointed expert, and any experts retained by the parties pursuant to Rule 5:3-3(g).

Reversed and remand. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1642-22