*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONIKA FREIJ,

        Plaintiff-Appellee,

v

MINA NADER FREIJ,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2026
11:55 AM

No. 371706
Oakland Circuit Court
LC No. 2023-517725-DM

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

This is a divorce case involving plaintiff, Monika Freij, and defendant, Mina Nader Freij. Defendant, appealing by right from a July 16, 2024 judgment, asserts that the trial court committed numerous errors in its division of the marital estate and in requiring defendant to pay attorney fees. For the reasons stated in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND AND FACTS

The parties married in July 2012. They had two children during the marriage.[1] At the beginning of the marriage, both parties worked full-time at the same accounting firm. After the birth of the children, the parties agreed plaintiff would no longer work outside the home. Plaintiff managed the household bills and finances, while defendant climbed the corporate ladder. In 2018, defendant was named an equity partner at PricewaterhouseCoopers, LLP (Pricewaterhouse), which required him to travel extensively and work long hours.

The parties' relationship began to deteriorate during the COVID-19 pandemic, at which point defendant was no longer required to travel for work. In June 2021, with the encouragement of defendant, plaintiff obtained full-time employment. The parties' relationship continued to deteriorate, and defendant ultimately transferred funds from the parties' joint checking and savings

---

[1] The parties resolved the issues of parenting time and custody before trial.

accounts at Dearborn Federal Credit Union (DFCU) into his own accounts. Defendant did not grant plaintiff access to the new DFCU accounts, and he took over management of the finances and the household bills. Plaintiff used her income, which was meager in comparison to defendant's income, to pay expenses relating to the children and other expenses defendant refused to pay. She opened an account at Chase Bank, where she deposited her paychecks. Plaintiff moved out of the marital bedroom, but neither party filed for divorce.

In June 2022, defendant's employment was terminated. He received significant payments under a severance agreement and in relation to equity he was owed as a partner through December 2022. Defendant did not obtain new employment, and he paid bills and expenses from the DFCU accounts he managed outside of plaintiff's reach.

In January 2023, plaintiff filed for divorce and, as relevant here, requested that the trial court equitably divide the marital estate, award her spousal support, and order defendant to pay her attorney fees. Shortly after plaintiff initiated the action, the trial court entered mutual restraining orders concerning the parties' finances, which were intended to maintain the parties' fiscal status quo. During the proceedings, defendant paid his credit card bills and attorney fees from the DFCU accounts he managed, but he did not permit plaintiff to have access to the funds. Defendant's spending despite his unemployment, his refusal to allow plaintiff access to marital funds, and his failure to comply with discovery led to extensive motion practice. The trial court reserved the issues of attorney fees, sanctions, and credit card payments for trial.

The bench trial commenced in April 2024, and it continued over five days. Defendant, who was still unemployed, requested that he be awarded the marital home, which was valued at $2 million. The parties disputed whether Apple Inc. stock, a Charles Schwab investment account, and $310,833.58 used for a down payment on the marital home were part of the marital estate, or were instead defendant's separate property. Plaintiff, who had maintained the same employment since June 2021, argued defendant was voluntarily unemployed and dissipated the marital assets during the proceedings. To support these claims, plaintiff presented the expert testimony of John Alfonsi. Plaintiff requested that defendant be required to pay her attorney fees, outstanding credit card debt, and spousal support.

On May 17, 2024, the trial court made rulings from the bench and instructed plaintiff to submit a proposed judgment of divorce. On July 16, 2024, the judgment of divorce was entered. The trial court ordered defendant to pay plaintiff for her share of the marital home within 60 days of the entry of the judgment of divorce. If defendant failed to do so, the home would be listed for sale and the proceeds divided between the parties. In the meantime, defendant was ordered to maintain the household's financial status quo for a period of time. The trial court found that the Apple stock, the Charles Schwab investment account, and the $310,833.58 from the down payment were part of the marital estate, and subject to division. The trial court ordered that certain retirement accounts would be divided equally, while others were premarital. The trial court awarded plaintiff's Chase Bank account to her, without explaining whether it was a marital asset. The trial court ordered the parties' outstanding legal fees, expert fees, and credit card bills be paid from the DFCU accounts managed by defendant. Defendant was also ordered to pay $40,000 from his share of the account toward plaintiff's attorney fees. In lieu of spousal support, the trial court awarded plaintiff additional shares of Apple stock.

This appeal followed. Defendant's motions to stay were denied in the trial court and this Court.

## II. STANDARDS OF REVIEW

"In a divorce action, we review for clear error a trial court's factual findings related to the division of marital property," *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010), including "findings of fact regarding whether a particular asset qualifies as marital or separate property," *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). "A finding is clearly erroneous if we are left a definite and firm conviction that a mistake has been made." *Cunningham*, 289 Mich App at 200. "This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997) (citation omitted).

"If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless this Court is left with the firm conviction that the division was inequitable." *Id*. at 429-430. Questions of law are reviewed de novo. *Cunningham*, 289 Mich App at 200.

We review a trial court's decision to award attorney fees for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). "The reasonableness of the fees awarded is also reviewed for an abuse of discretion, and any underlying questions of law are reviewed de novo." *Lakeside Retreats LLC v Camp No Counselors, LLC*, 340 Mich App 79, 89; 985 NW2d 225 (2022). "An abuse of discretion occurs when the result falls outside the range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Richards*, 310 Mich App at 699-700 (citations omitted).

## III. ANALYSIS

## A. DISMISSAL OF APPEAL

As an initial matter, plaintiff argues that this Court should dismiss defendant's appeal because his brief does not comply with certain court rules. Although we have discretion to dismiss an appeal for "failure of the appellant or the plaintiff to pursue the case in conformity with the rules" under MCR 7.216(A)(10), we decline to do so in this case. While perhaps imperfect, defendant's brief provides (1) a detailed factual background of this case; (2) sufficient references to the record; and (3) citations to relevant legal authority. The violations of the court rules identified by plaintiff are relatively minor and do not impede our ability to resolve the issues raised. See *Ladd v Motor City Plastics Co*, 303 Mich App 83, 93; 842 NW2d 388 (2013).

## B. DIVISION OF THE MARITAL ESTATE

Defendant makes several arguments relating to the trial court's categorization and distribution of property. As explained below, we agree with some of defendant's arguments and disagree with others, and a remand is required.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). When dividing the marital estate,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

In reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham*, 289 Mich App at 200. "Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party." *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997). However, the "trial court may utilize its equitable powers . . . to award separate property to the parties in order to reach an equitable result." *Skaates v Kayser*, 333 Mich App 61, 82; 959 NW2d 33 (2020), citing MCL 552.23(1) and MCL 552.401. Specifically, "[s]eparate assets may be invaded when a party demonstrates that the property awarded is insufficient for his or her suitable maintenance and support, or when a party significantly assists in acquiring or growing the other party's assets." *Hodge v Parks*, 303 Mich App 552, 561; 844 NW2d 189 (2014).

"As a prelude to . . . property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). "[A] trial court clearly errs when it fails to place a value on a disputed piece of marital property." *Id*. at 627-628.

## 1. RETIREMENT ACCOUNTS

Defendant first argues that the trial court clearly erred by including the premarital value of his retirement accounts from Pricewaterhouse in the marital estate. We agree.

"Pursuant to MCL 552.18(1), a trial court must include vested retirement benefits in the marital estate, making them subject to division." *Baker v Baker*, 268 Mich App 578, 582; 710 NW2d 555 (2005). But generally, parties are only required to divide the marital (as opposed to premarital) portion of retirement assets. *Hodge*, 303 Mich App at 562. Retirement assets accrued before marriage may nonetheless be divided if "such treatment is 'just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.' " *Booth v Booth*, 194 Mich App 284, 291; 486 NW2d 116 (1992), quoting MCL 552.23(1). "[I]n certain situations . . . the appreciation in [the] value [of a spouse's separate asset] during the marriage[] may be included in the marital estate." *McNamara*

*v Horner*, 249 Mich App 177, 185; 642 NW2d 385 (2002); see also *Reeves*, 226 Mich App at 495-496.

Defendant testified he worked for Pricewaterhouse both before and during the marriage. At the time of trial, defendant had several retirement accounts through Pricewaterhouse. He testified "[s]ome" of the retirement benefits were accrued during the marriage, and "[s]ome" of the amounts were related to defendant's employment at Pricewaterhouse before the marriage. Defendant was unable to provide specifics, and the evidence was not further developed at trial. However, defendant's trial brief, and the asset chart attached to it, reveal he claimed that a portion of his Pricewaterhouse retirement accounts was premarital and not subject to division. Nonetheless, the trial court ordered that the entirety of these accounts would be divided between the parties without explaining the basis of that decision.

We conclude that the trial court clearly erred by not recognizing that a portion of defendant's Pricewaterhouse retirement accounts was premarital property and by not assigning a value to the amount. Remand is necessary so that the trial court may do so. Once a value is assigned to the premarital portion, the trial court must then decide whether to revise the property distribution in accordance with equitable principles. See *Skaates*, 333 Mich App at 82; *Hodge*, 303 Mich App at 561.

2.  CHARLES SCHWAB ACCOUNT AND APPLE STOCK

Defendant next argues that the Charles Schwab account, which contained the Apple stock, should have been treated as his separate property and not included in the division of marital assets. We disagree.

Defendant opened the Charles Schwab account in 2008 and funded the account with premarital funds. Plaintiff testified that in January 2013 she transferred $100,000 into the Charles Schwab account to help purchase the Apple stock. Plaintiff described the source of the funds and the manner in which she transferred them. Documentation was reviewed by Alfonsi, who opined that $100,000 was transferred into the Charles Schwab account before the Apple stock was purchased on January 23, 2013. When asked if it was his "professional opinion that the funds that" plaintiff claimed "she transferred to acquire the Apple stock were, in fact, the funds used to purchase the Apple stock," Alfonsi responded: "All of the evidence that I have would suggest that, yes, that that was the hundred thousand dollars that made its way into the account to purchase the Apple stock."

Although defendant testified that the funds used to purchase the Apple stock were premarital funds that existed in the Charles Schwab account since its inception, Alfonsi's testimony was to the contrary and the trial court found Alfonsi to be credible. We give deference to the trial court's credibility determinations. See *Draggoo*, 223 Mich App at 429. Consequently, the evidence established that the Apple stock was purchased with the $100,000 transferred into the Charles Schwab account by plaintiff and some nominal funds that were already in the Charles Schwab account. The Apple stock was purchased for a joint marital purpose, i.e., to invest in the

parties' future, and consistently treated as marital property by the parties. The trial court therefore did not clearly err in finding that it was marital property, subject to division.[2]

Although the Charles Schwab account was a premarital asset, "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Cunningham*, 289 Mich App at 201 (quotation marks and citation omitted). Money is fungible, *Kemerer v State*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362055); slip op at 12, and often loses its separate character once commingled, see *Pickering v Pickering*, 268 Mich App 1, 12-13; 706 NW2d 835 (2005). See also *Riverview Cooperative, Inc v First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 317-318; 337 NW2d 225 (1983). When plaintiff transferred the marital funds and her personal funds into the Charles Schwab account in January 2013, these funds commingled with defendant's premarital funds in the account. The funds from the Charles Schwab account were then used to accomplish the marital goal of investing in the Apple stock, and the Apple stock was held in the Charles Schwab account from 2013 until trial. "The actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Cunningham*, 289 Mich App at 209. The trial court therefore did not clearly err in finding that the Charles Schwab account was a marital asset, subject to division.

### 3. DOWN PAYMENT FUNDS

Next, defendant argues that $310,833.58 in funds used for the down payment on the marital home was his separate property such that the trial court clearly erred by failing to credit him for that amount. We disagree.

During trial, defendant acknowledged $310,833.58 was deposited into the Charles Schwab account in December 2018, before it was used to help purchase the marital home. For the reasons already explained, the Charles Schwab account became a marital account in January 2013 because defendant's separate, premarital funds were commingled with marital funds to accomplish the joint marital goal of purchasing the Apple stock. Although defendant argues that the $310,833.58 was traceable, it is clear that the parties jointly purchased the marital home by using the $310,833.58 and joint marital funds for the down payment. Defendant did not purchase the marital home individually and with solely his own funds before the parties' marriage. Nor was the entire down payment on the marital home provided solely from defendant's separate funds. Rather, the parties

---

[2] Defendant appears to argue that the trial court also erred in awarding Apple stock to plaintiff in lieu of spousal support without accounting for the appreciation of the stock's value during the period of time during which spousal support would have otherwise been paid, thereby resulting in a windfall to plaintiff. It is difficult to discern, and defendant does not explain, how this argument relates to the question of whether the stock was a marital or separate asset, which is the issue raised in defendant's brief on appeal. Regardless, the issue of the stock's appreciation was not preserved for appeal because it was not raised in the trial court. We therefore decline to consider it. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) ("If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue.").

were married at the time of the purchase, purchased the marital home from their combined resources, and lived in the marital home at all relevant times. The fact that some of the money used for the down payment derived from a bank account predating the marriage is irrelevant because, during his marriage to plaintiff, defendant commingled his theoretically separate funds with marital funds to jointly accomplish the marital goal of purchasing a home. As stated, "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Cunningham*, 289 Mich App at 209. Therefore, the trial court did not clearly err in finding that the $310,833.58 was not defendant's separate property, and the trial court properly included it in the marital estate. See *id*. at 207-209.

## 4. CHASE BANK ACCOUNT

Next, defendant argues that the trial court improperly awarded plaintiff her Chase Bank account, which contained marital funds, without establishing the account's value. We agree.

"Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201. Plaintiff's income and the Chase Bank account were acquired or earned during the marriage, so they were subject to division. Although the trial court found defendant's DFCU accounts, which were created in 2021, were marital assets, the trial court awarded plaintiff her Chase Bank account, free from any claim of defendant. The trial court could have determined it was just and equitable to award plaintiff her Chase Bank account even though it was marital property, but the trial court did not state as much. This was clear error.

On remand, the trial court must determine the value of plaintiff's Chase Bank account as of May 17, 2024, which is the date the trial court used when valuing defendant's DFCU accounts. As with the retirement accounts, the trial court must then determine whether to adjust the property award in accordance with equitable principles.

## 5. CONCLUSION

We vacate the trial court's decision concerning the division of the marital estate and remand for further proceedings. On remand, the trial court must determine the premarital value of defendant's Pricewaterhouse retirement accounts and the value of plaintiff's Chase Bank account as of May 17, 2024. The trial court must then decide whether to revise the property distribution in accordance with equitable principles. If the trial court revises the property distribution, the court must also consider the relevant factors in *Sparks*, 440 Mich at 159-160, exercise its discretion in determining how to divide the marital estate, and explain why the division is equitable.

## C. ATTORNEY FEES

Defendant also argues that the trial court abused its discretion by awarding plaintiff attorney fees and by failing to consider whether the fees plaintiff requested were reasonable. We disagree.

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206[D]." *Id*. However, attorney fees are not recoverable as of right. *Id*. The party requesting attorney fees bears the burden of proof. *Safdar v Aziz*, 327 Mich App 252, 271; 933 NW2d 708 (2019).

In this case, plaintiff repeatedly sought attorney fees under MCR 3.206(D), and the trial court granted relief. MCR 3.206(D) provides as follows:

(D) Attorney Fees and Expenses.

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

Contrary to defendant's arguments on appeal, he was not required to pay more than $90,000 of plaintiff's attorney fees. During the divorce proceedings, defendant paid his attorney fees with marital funds, which he kept in DFCU accounts to which plaintiff did not have access. Meanwhile, plaintiff lacked significant assets and was allegedly unable to pay her fees. As of May 17, 2024, plaintiff had paid his attorney more than $70,000 in marital funds. According to representations of his counsel, defendant owed an additional $40,000 when trial concluded. Plaintiff owed $85,000 at the end of trial. In the end, all of defendant's attorney fees were paid from the marital estate, and more than half of plaintiff's attorney fees were paid from the marital estate. After the trial court distributed the marital estate, only $40,000 remained for defendant to pay from his share.

When ordering defendant to pay $40,000 from his share of the DFCU funds, the trial court found defendant was in a "stronger position to pay," and he "should have been paying all along." Although the trial court could have been more explicit, in context and under the circumstances of this case we understand the court to have recognized that plaintiff was unable to bear the expense of the action and defendant was able to pay. See MCR 3.206(D)(2)(a). These findings were not clearly erroneous, and consequently the trial court did not abuse its discretion in ordering defendant to pay attorney fees.

We also disagree with defendant that the trial court failed to consider the reasonableness of the attorney fees requested. "Generally, a party requesting a postjudgment award of attorney fees must show both that the attorney fees were incurred and that they were reasonable." *Souden v Souden*, 303 Mich App 406, 415; 844 NW2d 151 (2013). In determining reasonable attorney fees, trial courts are generally required to follow the framework from *Smith v Khouri*, 481 Mich 519, 530-531; 751 NW2d 472 (2008), as refined by *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281-282; 884 NW2d 257 (2016). See *Woodman v Dep't of Corrections*, 511 Mich 427, 450-452; 999 NW2d 463 (2023). During closing arguments at the bench trial, plaintiff's counsel went through the *Smith/Pirgu* factors, which defense counsel did not meaningfully contest. Again, the trial court could have been more explicit in its findings, but upon review of the whole record we are not persuaded that the trial court failed to consider the reasonableness of the amount requested or that its order for defendant to pay $40,000 fell outside the range of principled outcomes.

We therefore conclude that the trial court did not abuse its discretion and affirm the trial court's award of attorney fees to plaintiff.

## D. JUDICIAL REASSIGNMENT

Defendant's final argument is that we should remand to a different judge under MCR 7.216(A)(7) because the trial court exhibited incompetence and bias throughout trial. We disagree.

Under MCR 7.216(A)(7), we have authority to "remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). But "the party who challenges a judge on the basis of bias or prejudice must overcome a heavy presumption of judicial impartiality." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).

Defendant has failed to overcome that presumption, and his argument that the trial court judge was incompetent lacks merit. The trial court judge was alert, responsive to objections, and understood his role was to maintain control over the proceedings and act as the factfinder. The record indicates that he took great pains to understand the parties' positions, hear the evidence, and render an equitable decision. It is clear the trial court was frustrated at times. However, the trial court's remarks did not display such deep-seated favoritism toward plaintiff, or antagonism toward defendant, as to render fair judgment impossible. Partiality is not established by "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Cain*, 451 Mich at 497 n 30 (alteration in original; quotation marks and citation omitted). The trial court's comments do not demonstrate the trial court will "have substantial difficulty in putting out of his . . . mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected[.]" *In re LT*, 342 Mich App 126, 140; 992 NW2d 903 (2022) (quotation marks and citations omitted).

Defendant's arguments that the trial court judge was mentally incompetent are equally unavailing. We have reviewed the transcripts in detail, paying particular attention to the comments noted by defendant on appeal. We do not share defendant's concerns. Although we agree with defendant certain legal errors were made by the trial court, "[t]he mere fact that a judge ruled

against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009).

## IV.  CONCLUSION

The trial court erred, and remand is required, in connection with (a) the premarital portion of defendant's Pricewaterhouse retirement accounts and (b) plaintiff's Chase Bank account.  In all other respects the trial court's rulings are affirmed.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  No taxable costs are awarded, neither party having prevailed in full.  MCR 7.219.  We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney